[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 31, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-10361

_____

D. C. Docket No. 98-01415-CV-ORL

WILLIAM SHANNON,

Plaintiff-Appellee-
Cross-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.,

Defendant-Appellant-
Cross-Appellee.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(May 31, 2002)**

Before BLACK, CARNES and WILSON, Circuit Judges.

WILSON, Circuit Judge:

BellSouth Telecommunications, Inc. appeals the denial of its motion for

judgment as a matter of law on William Shannon's Title VII retaliation claim, and

Shannon challenges the reductions made in the award of attorney's fees because of

his unsuccessful religious discrimination and disability claims. For the reasons that follow, we affirm.

## BACKGROUND

Shannon worked as a BellSouth service technician, a position that requires occasional Sunday work. On several of the Sundays he was scheduled to work, he used his lunch break to attend Sunday school. When a BellSouth senior manager who attended Shannon's church saw Shannon there in uniform, he told Brenda Fowler, the manager in charge of Shannon's area. Fowler suspended Shannon for misuse of company time and a company vehicle and told Shannon's supervisor, Clarence "Hank" Hankerson, to tell Shannon he could no longer attend Sunday school. Shannon asked for that order to be put in writing and protested the suspension through the union grievance procedure. Unsatisfied with BellSouth's response, Shannon filed a charge of religious discrimination with the Equal Employment Opportunity Commission (EEOC) and subsequently filed a seven-count complaint against BellSouth, alleging violations of the Americans with Disabilities Act, Title VII, and the Florida Civil Rights Act.

The religious discrimination and retaliation claims survived BellSouth's motion for summary judgment and proceeded to trial. Shannon presented evidence that a pattern of retaliatory conduct began after he complained of religious

discrimination. He testified that he was denied overtime in retaliation for his complaints of discrimination. In a typical year, he testified, he earned $15,000 to $20,000 in overtime. Now, he makes $1200 to $2000 in overtime. Although Shannon acknowledged that the reduced overtime was due in part to the hiring of new employees, he also asserted that BellSouth blocked him from overtime opportunities in retaliation for his complaints of discrimination. He testified, "[W]hen they would call in the employees at seven o'clock in the morning, they wouldn't call me. I would be totally blackballed from being called in." Ten or more times a year, he said, he showed up to work and everyone except him had been called out for overtime. "I get to work and the whole yard is vacant," he testified, "all of the trucks are gone and there's mine."

In addition to the denial of overtime, Shannon presented the following evidence that he claimed established that BellSouth retaliated against him for his complaints of discrimination: shortly after filing an EEOC charge, he was reassigned to an area where he claimed it was more difficult to meet BellSouth's performance standards; he received a more severe suspension than other employees who had not complained of discrimination; he had difficulty swapping workdays because a supervisor had instructed other employees to shun him; he was assigned to an un-air-conditioned van; he was sent home to change when he came to work

3

with nonuniform pants; he was not allowed to use company time to get fitted for the safety glasses his job required; and he was not allowed to go home to change after his clothes were soiled with dog excrement.

After hearing the evidence, the jury returned a verdict for BellSouth on the religious discrimination claim, but for Shannon on the retaliation claim, awarding him $83,000 in damages. Shannon's lawyer sought $60,000 in attorney's fees as the prevailing party, but the court reduced the fee award because of Shannon's limited success. BellSouth appeals the denial of its motion for judgment as a matter of law on Shannon's retaliation claim, and Shannon appeals the reductions in the fee award.

## DISCUSSION

### A. Retaliation Claim

We review de novo the denial of a motion for judgment as a matter of law, and, in applying the same standard as the district court, we view all facts in the light most favorable to the nonmoving party. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 582 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076 (2001). The jury's verdict must stand unless "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a)(1). It is the jury's task – not ours – "to weigh conflicting evidence and inferences, and

determine the credibility of witnesses." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (internal quotation marks omitted). If reasonable jurors could reach different results, we must "not second-guess the jury or substitute our judgment for its judgment." *Id.*; *Gupta,* 212 F.3d at 582.

To establish a prima facie case of retaliation under 42 U.S.C. § 2000e-3(a),[1] a plaintiff must show "that (1) [he] engaged in . . . statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) there is a causal [connection] between the two events." *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000). If "a plaintiff makes out a prima facie case of retaliation, the burden shifts to the defendant" to produce "legitimate reasons for the adverse employment action." *Id.* at 507 n.6 (internal quotation marks omitted). If the defendant does so, the plaintiff must show that the reasons the defendant gave were pretextual. *Id.*

---

[1]Title VII makes it unlawful for employers "to discriminate against . . . [an] employee[] or applicant[] for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

BellSouth does not contest that Shannon engaged in statutorily protected expression.[2]  However, BellSouth argues that it was entitled to judgment as a matter of law on Shannon's retaliation claim, because (1) Shannon did not suffer adverse employment action; (2) Shannon failed to establish a causal link between his statutorily protected expression and any employment action; and (3) Shannon failed to establish that BellSouth's proffered reasons for the employment actions were pretextual.

BellSouth argues that Shannon did not prove the tangible harm necessary to constitute an adverse employment action because, as of trial, he still was employed by BellSouth with the same job title even though he had been reassigned to a different geographic area.  Adverse employment action does not refer only to ultimate employment decisions, such as the decision to discharge an employee. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). Employer conduct falling short of an ultimate employment decision may still be cognizable under Title VII if it reaches "some threshold level of substantiality." *Id.*  "While not everything that makes an employee unhappy is an actionable

---

[2]Shannon engaged in protected activity well before filing the EEOC charge in September of 1997, by voicing complaints of discrimination to his supervisors and by protesting his suspension through the grievance procedure.  Title VII protects not just "individuals who have filed formal complaints," but also those "who informally voice complaints to their superiors or who use their employers' internal grievance procedures." *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam).

adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action under Title VII." *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001) (citation omitted) (internal quotation marks omitted).

We agree with BellSouth that Shannon's reassignment does not constitute adverse employment action. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1239, 1244 (11th Cir. 2001) (cautioning that when a reassignment involves no "*serious and material* change in the terms, conditions, or privileges of employment," a court should not act as a "super-personnel department" by questioning an employer's business judgment about where it assigns employees). But Shannon's claim did not depend solely on his reassignment. He also produced evidence of other retaliatory conduct by BellSouth. Although some of the conduct that Shannon asserted was retaliatory is not objectively serious and tangible enough to be cognizable under Title VII (for instance, being sent home to change for wearing a nonregulation uniform), Shannon also presented evidence that in retaliation he was "totally blackballed" from overtime. In *Bass*, where the plaintiff alleged, among other things, that he was denied overtime opportunities, we held that employer actions that "deprived [the employee] of compensation which he otherwise would have earned clearly constitute adverse employment actions for

7

purposes of Title VII." 256 F.3d at 1118. While the other actions of which Shannon complains "might not have individually risen to the level of adverse employment action under Title VII, when those actions are considered collectively, the total weight of them does constitute an adverse employment action." *Id.*

Even if Shannon established adverse employment action, BellSouth argues that Shannon failed to establish that any adverse action was caused by his complaints of discrimination. "To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Gupta*, 212 F.3d at 590. "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *Bass*, 256 F.3d at 1119. Shannon's journal indicates that the denial of overtime began immediately after the March 11, 1997 grievance meeting with Fowler and Hankerson where Shannon protested his suspension. Such close temporal proximity is sufficient for a reasonable jury to infer causation. *See Gupta*, 212 F.3d at 590.

Even if Shannon proved a prima facie case of retaliation, BellSouth argues that it is entitled to judgment as a matter of law, because Shannon failed to present sufficient evidence that BellSouth's proffered reasons for the employment actions

8

were pretextual.  While even Shannon acknowledged that there was a nondiscriminatory reason for him receiving fewer overtime opportunities – the hiring of new employees – this would not explain why Shannon was "totally blackballed" from overtime opportunities open to other employees and why he showed up to work and realized that all of the other employees had been called in early.  Shannon presented evidence from which a reasonable jury could conclude that BellSouth retaliated against him in violation of Title VII.  Thus, the district court did not err in denying BellSouth's motion for judgment as a matter of law.[3]

## B.  Fee Award

We review an award of attorney's fees under the abuse of discretion standard.  *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1491 (11th Cir. 1994).  In a Title VII suit, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee."  42 U.S.C. § 2000e-5(k).  A court should not award fees for time spent on unrelated, unsuccessful claims.  *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (11th Cir. 1987).  Even if the claims are related, however,

---

[3]BellSouth also argues that Shannon failed to present legally sufficient evidence for a reasonable jury to award compensatory damages on his retaliation claim. We will not entertain this argument, because BellSouth raised this issue for the first time in its postverdict renewed motion for judgment as a matter of law.  If a party asserts new grounds in its renewed motion for judgment as a matter of law that it did not assert in its initial motion for judgment as a matter of law, a court "may not rely on the new grounds to set aside the jury's verdict." *Ross v. Rhodes Furniture, Inc.*, 146 F.3d 1286, 1289 (11th Cir. 1998).

"[a] reduction is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).

Shannon argues that his lawyer already deducted hours for the lack of success on his ADA claims and that the court should not have made a further reduction for time spent on the unsuccessful religious discrimination claim, because the discrimination and the retaliation claims were substantially intertwined and interrelated.

Even though the discrimination and the retaliation claims are related, the district court did not abuse its discretion in reducing the fee award because Shannon's success with the retaliation claim was limited in relation "to the scope of the litigation as a whole." *Id.* In *Avila v. Coca-Cola Co.*, 849 F.2d 511, 514 (11th Cir. 1988), where a plaintiff succeeded on his retaliation claim but not on his national origins discrimination claim, we held that reductions in the fee award were not an abuse of discretion because "the relief Avila obtained due to his success on the retaliation claim was of a different nature and considerably less than the relief he would have obtained had he also succeeded on the national origins claim." The same holds true here. We find no abuse of discretion in the reductions in the fee award.

10

## CONCLUSION

For the foregoing reasons, we hold that the district court did not err in denying BellSouth's motion for judgment as a matter of law and did not abuse its discretion in reducing the attorney's fee award to account for Shannon's limited success in comparison to the scope of the litigation as a whole.

**AFFIRMED**.