[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 08, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10417
Non-Argument Calendar

_____

D. C. Docket No. 02-00357-CV-J-32-MMH

TONY A. WILSON,

Plaintiff-Appellant,

versus

LUCY FARLEY,
FANNIE GREEN,
ANN HENDRICKS,
WILLIAM DAY,
ROGER WILLIAMS et al.,

Defendants-Appellees,

TAMMY GAJEWSKI, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(September 8, 2006)**

Before BIRCH, DUBINA and HULL, Circuit Judges.

PER CURIAM:

Tony A. Wilson appeals the district court's grant of summary judgment in favor of appellees, his former employer, the Florida Department of Children and Families and ten of his former co-workers in their individual and official capacities (collectively, "DCF"), and denial of his motion for reconsideration as to his race discrimination and related claims. Because we conclude that (1) Wilson did not establish a prima facie case of retaliation, (2) Wilson was afforded adequate opportunity to clear his name regarding the reasons given for his termination, and (3) the individual defendants did not violate any of Wilson's constitutional rights and were entitled to qualified immunity, the district court did not err in granting the defendants' motion for summary judgment. Additionally, because the court had the power to control its docket and Wilson did not allege that he was prejudiced by any delay, we conclude that the district court did not abuse its discretion in ordering the parties to delay their motions for summary judgment. Neither did the district court abuse its discretion in setting aside the entry of default judgment. Accordingly, we AFFIRM the district court's grant of summary judgment in favor of defendants and its denial of Wilson's motion for reconsideration. Finally, because appellees' brief complies with the Federal Rules of Appellate Procedure

and Wilson had the opportunity to respond to any factual allegations in his reply brief, Wilson's motion to strike is DENIED.

## I. BACKGROUND

Wilson, an African American male, filed an action alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2, 42 U.S.C. §§ 1981 and 1983, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01-760.11 and 509.092. Wilson alleged that he had become a "Florida Career Service Employee" in June 2001 and that his district program manager, Lucy Farley, had terminated him in February 2002 for "conduct unbecoming a public employee, insubordination, and disruptive conduct," but actually because he had complained of race discrimination. R3-142 at 2 (emphasis omitted).

Wilson further alleged that, from September 2001 to November 2001, he had held "an objectively good faith reasonable belief that" his co-worker, William Day, was treating him differently from co-workers because of his race. Id. Wilson claimed that, as a result of his complaints about Day's conduct, Farley and Roger Williams retaliated against Wilson by falsely stating that Wilson had failed to insert the four paragraphs into his case plans[1] and, later, by terminating him.

---

[1]Case plans, which Wilson created as part of his job, consisted of a descriptive list of tasks that a parent, relative, or guardian had to complete before their child custody rights were reinstated.

Wilson also alleged that he had provided Farley with the following information: (1) a 7 September 2001 complaint, addressed to Fannie Green and Eddie Gibson, Wilson's supervisors, about Day's treating Wilson "differently than the other court workers, because of his race and using the case plans to harass [him]"; discriminatory and harassing conduct toward Wilson; (2) a 6 November 2001 complaint, addressed to Gibson and Ann Hendricks, Day's supervisor, regarding the same; (3) information that, on 6 November 2001, Wilson had mailed a complaint to the DCF's office of civil rights ("OCR") and the Equal Employment Opportunity Commission ("EEOC"); and (4) an email, which Wilson originally sent to Gibson and Hendricks on 7 November 2001 to inform them that he had sent a complaint to the DCF/OCR and the EEOC. Id. at 4. Wilson further stated that his supervisors never investigated either his complaints against Day or the conduct that they alleged Wilson committed.

In the next two counts of the complaint, Wilson reiterated his retaliatory discharge claim as against the DCF and also pursuant to the FCRA. The fourth count, brought pursuant to 42 U.S.C. § 1983, alleged that the DCF had deprived Wilson of his due process rights. Wilson explained that he had been deprived of a meaningful opportunity to be heard regarding the charges against him or for a post-termination name-clearing hearing. Wilson acknowledged that the DCF provided

4

him with a predetermination letter prior to his termination, but asserted that the letter was insufficient to safeguard his liberty interest. Wilson also raised due process claims in the fifth and sixth counts. In the last three counts, Wilson alleged that the DCF had engaged in pre-hiring retaliation, in violation of 42 U.S.C. § 1981, when it relied on the information regarding Wilson's termination as grounds for refusing to hire Wilson for the positions of Protective Investigator, Attorney, or Child Protective Investigator.

After Wilson had filed a second amended complaint, he moved the district court to enter default judgment against the DCF because it had not timely responded to the summons and second amended complaint. The clerk entered default judgment. However, upon the motion of the DCF, the district court set aside the default judgment, finding that defendants had "shown good cause" by way of demonstrating excusable neglect in that the complaint had not been properly served upon them. R1-36 at 5; R2-54.

In answer to Wilson's third amended complaint, the DCF denied Wilson's material allegations that it had retaliated against him, but admitted that certain DCF personnel, including Hendricks, Day, and Farley, had been aware of Wilson's racial discrimination complaint made on 6 and 7 November 2001. The DCF also admitted that Wilson had sent an email on 7 November 2001 in which he stated

5

that he had sent a complaint of disparate treatment to the EEOC, but the DCF denied that the email indicated that race was the basis for the treatment. Additionally, the DCF set forth affirmative defenses, including that the individual defendants were entitled to qualified immunity.

Wilson subsequently moved for summary judgment on the Title VII, 42 U.S.C. § 1983, FCRA, and liberty interest claims. The DCF also moved for summary judgment, arguing that Wilson had not set forth a prima facie case of retaliation, the DCF was not on notice of the alleged harassment, and Wilson could not show causation or pretext. Concerning Wilson's due process claims, the DCF argued that Wilson had received due process by way of the predetermination letter of 18 December 2001, which detailed Wilson's alleged conduct violations, and the opportunity to attend the predetermination hearing at which Wilson failed to appear. The DCF also pointed out that Wilson could have attended a post-termination hearing through the Public Employees Relations Commission ("PERC"), but that he failed to do so.

Wilson's deposition testimony described the hierarchy at the DCF as follows: Farley supervised Green, who supervised Gibson, who supervised Wilson. Wilson also stated that Day was a DCF attorney, supervised by Hendricks, who

6

was supervised by Roger Williams.[2]  Wilson testified that, on 6 November 2001,

he had a discussion with Day concerning Wilson's belief that Day required Wilson,

and no one else, to add four specific paragraphs[3] to his case plans.  Wilson further

alleged that, after this discussion, Day became upset and said "he was tired of my

black ass."  R8-312 (Exhibits Folder - Deposition of Tony Wilson) at 88.  Wilson

testified that he did not become angry or raise his voice while he talked with Day.

Wilson also stated that he went to Hendricks's office on 6 November 2001 to

discuss the problem and to report Day's conduct, which he considered to be

discriminatory.  Id. at 112-14.  After his meeting with Hendricks, Wilson sent

letters to the DCF/OCR and to the EEOC.  Wilson stated that two employees from

the EEOC contacted him in December 2001 and requested further information.

---

[2]As of 25 April 2005, the date of his deposition, Wilson had completed law school and passed the Florida Bar exam, but he was not a member of the Florida Bar.  R9-335 at 15 n.14.

[3]The four paragraphs at issue are:
1.  The ____ will provide the names, dates of birth and any other relevant information on all adults residing in the home of the ____.
2.  The ____ will advise the Department of Children and Families of any change of residence as well as the physical address of such new residence within 72 hours of said change of residence.
3.  The ____ will sign an authorization for release of information to the Department of Children and Families when requested by the counselor so that relevant information may be obtained to verify compliance with said case plan, amount [sic] other things.
4.  The ____ will not knowing [sic] reside with any person with a history of domestic and/or physical violence.

R7-303, Exh. 6.

Wilson sent the EEOC additional correspondence on 19 November and in December 2001.

Wilson testified that he appealed his termination to PERC, but did not appear at the PERC hearing because he had "decided to abandon that avenue." Id. at 132, 135-37. Wilson believed that Day retaliated against him by leaning over him and talking loudly, and by sending an email on 9 November 2001 that led to Wilson's termination. Wilson also stated that Farley retaliated against him by moving for his dismissal on 7 November 2001, not reviewing his letter with regard to the 27 December 2001 predetermination conference, and failing to investigate the charges against him.

Wilson further testified that, on 6 November 2001, he entered Gibson's office without knocking while Gibson was in a meeting with another employee, and remained there until that meeting had concluded. Wilson and Gibson then discussed placing the four paragraphs in Wilson's case plans. Wilson testified that he was not irate during their conversation, that he did not know whether Gibson went to speak with Day after their discussion. Wilson did not dispute that a predetermination meeting was held on 27 December 2001, and that he did not attend, but rather submitted documents on his own behalf. Wilson asserted that the

letters written on 18 December 2001 and 11 February 2002 implicated his liberty interest.

In her deposition, Farley testified that, in signing the 11 February 2002 dismissal letter, she considered all of the written information that she had from Wilson. R8-304 (Exhibits Folder), Exh. 1 at 35-36. She further stated that she did not investigate the charges against Wilson because it was Green's role, not hers.

Gibson said that Wilson's job was to put case plans together and to have those plans reviewed by Gibson, and attorneys Day and Stacy Hill. R7-294 (Exhibits Folder), at TAB: Affidavit of Eddie Gibson, ¶¶ 4-6. Gibson further indicated that, beginning in the late summer and early fall of 2001, Day complained that Wilson was not putting necessary information in the case plans. Gibson therefore drafted four paragraphs containing the necessary information, which Day and Hill approved, and instructed Wilson to add that language to all of his case plans. Gibson denied Wilson's allegation that he had instructed Wilson to discontinue adding the four paragraphs on 8 October 2001. Id. ¶ 8. Gibson stated that Wilson complained that the new language was not required by other unit managers, but explained that, because different attorneys were assigned to the different units, units often had varied procedures. Gibson also stated that Wilson alleged that Day "was discriminating against him, though he provided no specific

facts of discrimination, other than his general griping about the new task language." Id. ¶ 10.

Gibson recounted that, on 4 November 2001, he noticed that several of Wilson's case plans did not contain the new language, so he returned those plans to Wilson and asked him to add the language. He described how, on 6 November 2001, while he was in his office meeting with another employee, Wilson had entered unannounced and appeared "quite angry." Id. ¶ 13. Gibson stated that Wilson "was irate and asked why 'games' were being played with the case plans." Id. Wilson also told Gibson that he had included the necessary language in an attachment to his case plans. Id. Gibson took the attachment to Day and Hill, who found it legally insufficient. Gibson also reported that Wilson returned to Gibson's office and demanded to know why the changes were required, refused to accompany Gibson to the attorneys' offices to get further clarification, and "pointed his finger at [Gibson] in a threatening manner." Id. ¶ 15. Gibson informed Wilson, on 7 November 2001, that he "did not appreciate the manner in which" Wilson had treated Gibson. Id. ¶ 16. Thereafter, upon Farley's request, Gibson prepared a statement recounting the events of 6 November 2001.

In addition to the depositions and affidavits, the parties submitted various documentary exhibits in support of their summary judgment motions, of which the

10

following are relevant to this appeal: (1) the 18 December 2001 predetermination letter that identified the charges against Wilson, and informed him that the DCF was considering his dismissal and that he could request a conference to rebut the charges, R7-294 (Exhibits Folder), Exh. 1; (2) Wilson's 11 February 2002 dismissal letter, which indicated that a predetermination conference had been held on 27 December 2001 and that, because Wilson did not attend, Farley had made a decision about his dismissal "based on the information outlined in [her] December 18, 2001 letter to [Wilson] and the written documentation [Wilson had] submitted," id. Exh. 2; (3) an email, dated 7 November 2001 and written by Wilson, which stated: "[o]n November 6, 2001, I forwarded a complaint against Mr. Day for [d]isparate [t]reatment [d]iscrimination to the [OCF/DCF] and the EEOC" id. Exh. 7; (4) a letter, dated 6 November 2001, from Wilson to the DCF/OCR in which Wilson stated that Day had discriminated against him by requiring him, and not requiring any other DCF employee, to add language to his case plans, id. Exh. 44 at 1, and the DCF/OCR response, stating that it was "unable to determine the basis of [Wilson's] alleged discrimination or delineate the details of [Wilson's] alleged personal harm," id. at 3; (5) a 12 December 2001 letter from the EEOC to Wilson, instructing him that if he believed his discrimination was based on a protected factor, he could file a charge, id. Exh. 47; (6) a 15 February

11

2002 letter from Wilson to the EEOC, alleging discrimination based on Wilson's sex and race, id. Exh. 48; and (7) Wilson's charge of discrimination on an EEOC form dated 1 April 2002, id. Exh. 49.

The court found that Wilson had failed to satisfy the first prong for a prima facie case of retaliation because he had not produced evidence that he had engaged in a statutorily protected activity. More specifically, the court explained that Wilson had failed to demonstrate that he had an objectively reasonable belief that the DCF had discriminated against him, adding that Day's requirement that Wilson add the four paragraphs to his case plans was "hardly the stuff of racial discrimination or hostile work environment." R9-335 at 21. Further, in accepting as true Wilson's claim that Day made a racially derogatory remark to him, the court found that the single remark was not "a basis for bringing a charge of discrimination." Id. at 21-22. Finally, the court found that "Wilson's unsubstantiated assertions of alleged differential treatment based on race, without supportive evidence, [were] insufficient to create a genuine issue of material fact that his charge of discrimination based upon race was objectively reasonable." Id. at 22. The court additionally concluded that, even if Wilson had established a prima facie case of retaliation, he had not presented sufficient evidence to create a genuine issue of material fact as to whether the DCF's legitimate,

12

nondiscriminatory reason for terminating Wilson – insubordination, disruptive conduct, and conduct unbecoming a public employee – was pretextual. The district court granted the DCF's motion for summary judgment as to these claims.

In determining that the DCF did not deny Wilson procedural due process, the court found that, even assuming arguendo that the predetermination process was procedurally inadequate, Wilson had an adequate post-termination remedy in that he could have continued his appeal before the PERC, rather than abandoning the claim. With regard to Wilson's substantive due process liberty interest claim, the court found that the DCF was entitled to summary judgment because Wilson had the opportunity to clear his name either through the predetermination hearing, which he chose not to attend, or the PERC appeal process. The court also found, concerning the DCF's claim of qualified immunity for the individual defendants, that a qualified immunity inquiry was not necessary because Wilson had not established a violation of any constitutional right associated with his termination.[4] After the court's grant of summary judgment in favor of the DCF, Wilson moved for reconsideration. The court denied the motion.

---

[4]The district court also granted the DCF's motion for summary judgment as to Wilson's retaliatory discharge claim under the FCRA, his § 1981 retaliatory discharge claim, and his § 1981 retaliatory failure to hire claim. Wilson does not raise those issues on appeal and we do not address them.

13

On appeal, Wilson argues that (1) he did establish a prima facie case of retaliation; (2) he was not afforded adequate due process before or after his termination; (3) the individual defendants were not entitled to qualified immunity; (4) the district court erred in ordering the parties to refrain from filing their summary judgment motions until discovery was complete; and (5) the district court abused its discretion in setting aside the default judgment entered against certain of the defendants. We address each issue in turn.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, viewing all facts "in the light most favorable to the non-moving party." Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1199 (11th Cir. 2001). "Summary judgment is only proper if there are no genuine disputed issues of material fact, and the moving party is entitled to judgment as a matter of law." Frederick v. Sprint/United Mgmt. Co., 246 F.3d 1305, 1311 (11th Cir. 2001); see also Fed. R. Civ. P. 56(c).

A. *Prima Facie* Case of Retaliation

Wilson argues on appeal that the district court erred in concluding that he failed to present a prima facie case of retaliation because he had engaged in protected activity by way of informal complaints to his superiors alleging racial

14

discrimination that he had suffered. Title VII prevents an employer from retaliating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A claim brought under 42 U.S.C. § 1981 is analyzed under the same framework as a Title VII claim because both statutes have the same requirements of proof. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998). To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) []he participated in an activity protected by Title VII; (2) []he suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

We have held that "Title VII protects not just individuals who have filed formal [EEOC] complaints, but also those who informally voice complaints to their superiors." Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 n.2 (11th Cir. 2002) (quotations omitted). To demonstrate participation in a protected activity for purposes of a prima facie case, however, "a plaintiff must show that []he had a good faith, reasonable belief that the employer was engaged in unlawful

15

employment practices." Weeks v. Harden Mfg. Corp., 291 F.3d 1307, 1311 (11th Cir. 2002) (quotation omitted). Accordingly, a plaintiff must demonstrate both his subjective belief that his employer was engaged in unlawful employment practices and that his "belief was objectively reasonable in light of the facts and record presented." Id. at 1312.

Viewing the facts in the light most favorable to Wilson, and based on the record, it is clear that Wilson at least made the DCF aware of his belief that Day had discriminated against him, even if the record is unclear as to when Wilson filed a formal complaint with the DCF/OCF or EEOC. Therefore, the record supports Wilson's allegation that he complained of discrimination, but the issue remains as to whether those complaints constitute "protected activity" under Title VII. See Gupta, 212 F.3d at 587. In making that determination, we must ascertain whether Wilson's subjective belief that he had been discriminated against was objectively reasonable. See Weeks, 291 F.3d at 1311-12.

The discriminatory conduct Wilson alleged was (1) Day's requirement that Wilson insert four additional paragraphs into his case plans, and (2) Day's remark that he was tired of Wilson's "black ass." See R8-312 (Exhibits Folder - Deposition of Tony Wilson) at 112-14. Wilson maintained that the requirement that he had certain paragraphs to his case plans was discriminatory because Day

16

did not require any other employees to insert the language, but Wilson offered no evidence in support of this allegation.  Further, Day's single derogatory remark was insufficient to serve as a basis for a discrimination charge where Day was merely Wilson's co-worker, rather than his supervisor, and, thus, Day's conduct could not be attributed to the DCF.  See Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 959-60 (11th Cir. 1997) (concluding that a co-worker's single racially offensive remark was not attributable to the employer, and, thus, the plaintiff's opposition to it did not constitute opposition to an unlawful employment practice under Title VII).  Accordingly, we conclude that Wilson's informal complaints that his co-worker William Day's conduct  constituted racial discrimination were not objectively reasonable.  Accordingly, they do not constitute participation in a protected activity.  Thus, the district court did not err in finding that Wilson failed to satisfy the first prong of a prima facie case for retaliation.[5]

---

[5]Wilson also argues that the district court erred in finding that his dismissal was for just cause, as required under Fla. Stat. § 110.227(1), (2), (5), but makes no explicit argument on appeal regarding the district court's findings that the DCF presented a legitimate, non-discriminatory reason for Wilson's dismissal, and that Wilson failed to establish that the reason was pretext.  Once a Title VII plaintiff establishes his prima facie case, the employer has the burden to produce a legitimate, nondiscriminatory reason for its actions.  Sullivan v. Nat'l R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999).  We have held that this burden is "exceedingly light" and that the employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof."  Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir.), cert. denied, __ U.S. __, 126 S.Ct. 478 (2005) (quotation omitted).  If the employer satisfies its burden, thus rebutting the presumption of retaliation, the plaintiff must then demonstrate that the employer's

17

B. <u>Due Process</u>

Wilson first argues that the district court erred in not analyzing his due process claim regarding DCF's placement of allegedly stigmatizing documents in his personnel file under the Equal Protection Clause. However, because Wilson did not present an equal protection argument before the district court, we will not consider that argument on appeal. <u>See</u> <u>Thaeter v. Palm Beach County Sheriff's Office</u>, 449 F.3d 1342, 1351 n.6 (11th Cir. 2006) (refusing to analyze an issue raised for the first time on appeal).

Wilson also argues that the DCF violated a "liberty interest" in failing to give him an opportunity to clear his name as to the charges upon which his termination was based.[6] "[A]lthough damage to reputation, standing alone, does

reason is a pretext for retaliatory conduct. <u>Sullivan</u>, 170 F.3d at 1059. "To show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Cooper</u>, 390 F.3d at 725 (quotation omitted).

As discussed, Wilson has not established a <u>prima</u> <u>facie</u> case of retaliation because he did not demonstrate that he had engaged in a statutorily protected activity. Even if he had, his claim still fails because the DCF asserted a legitimate, nondiscriminatory reason for terminating Wilson – rude and improper behavior in the workplace – and Wilson did not offer evidence sufficiently supporting his contention that this reason was pretextual. Rather, he has offered little more than conclusory allegations that he did not engage in the improper behavior for which the DCF terminated him, and he has failed to point to any "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons" that would create a genuine issue of material fact as to whether the DCF's reason was pretextual. <u>See</u> <u>id.</u> (quotations omitted). Accordingly, even if Wilson had established a <u>prima</u> <u>facie</u> case at the outset, we conclude that the district court did not err in finding that he failed to satisfy his burden as to pretext for retaliation.

[6]As to any other procedural due process claims, Wilson has, by his own statement, abandoned them on appeal. <u>See</u> Appellant's Br. at 6.

18

not provide a basis for an action under 42 U.S.C. § 1983[,] when reputational damage is sustained in connection with a termination of employment, it may give rise to a procedural due process claim for deprivation of liberty which is actionable under section 1983." Cotton v. Jackson, 216 F.3d 1328, 1330 (11th Cir. 2000) (per curiam). "To recover, a plaintiff must satisfy a six-factor test and show that (1) a false statement, (2) of a stigmatizing nature, (3) attending a governmental employee's discharge, (4)[was] made public, (5) by the governmental employer, (6) without a meaningful opportunity for an employee name clearing hearing." Id. (quotations omitted). Such a hearing may "be held either before or after the termination or publication." Id. "If adequate state remedies were available but the plaintiff failed to take advantage of them, the plaintiff cannot rely on that failure to claim that the state deprived him of procedural due process." Id. at 1331.

Here, Wilson had more than one opportunity to clear his name. First, Wilson could have attended the DCF's predetermination hearing, but instead he chose to submit a written response to the DCF's charges against him. Second, Wilson could have followed through with the appeal that he initiated through Florida's PERC process. Instead, he chose to "abandon that avenue." R8-312 (Exhibits Folder - Deposition of Tony Wilson) at 132, 135-37. Given these opportunities to clear his name, both before and after his termination, the district

19

court correctly concluded that the DCF had not deprived Wilson of a liberty interest without due process of law.

## C. Qualified Immunity

Wilson argues that the district court erred in finding that the individual defendants were entitled to qualified immunity. He specifically asserts that the individual defendants were not acting within the scope of their authority in failing to investigate the charges against him and in carrying out his termination. He further maintains that the individual defendants violated his clearly established constitutional rights.

To establish entitlement to qualified immunity, a public official must first demonstrate that he was "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation omitted). The burden then shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. Id. In deciding whether the plaintiff has satisfied his burden, a reviewing court must first determine whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [public official's] conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).

Here, the individual defendants, Wilson's co-workers and supervisors, either complained about what they believed was inappropriate behavior by Wilson in the workplace, or initiated and completed the DCF's termination procedure against Wilson. Thus, it is clear that the individual defendants were acting within the scope of their discretionary duties in connection with Wilson's dismissal. Thus, we proceed to the issue of whether the individual defendants violated any of Wilson's constitutional rights. See Saucier, 533 U.S. at 201, 121 S.Ct. at 2156. As discussed above, neither the DCF nor the individual defendants violated any constitutional right. Accordingly, the district court did not err in finding that the individual defendants are entitled to qualified immunity. See id. ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

D. Order to Refrain from Filing

Wilson complains that, in the course of the proceedings below, the district court ordered the parties to refrain from filing a motion for summary judgment until the expiration of the discovery process. A district court retains the inherent authority to manage its own docket. See Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr S.A., 377 F.3d 1164, 1172 n.7 (11th Cir. 2004). Accordingly, we will review the district court's order for an abuse of discretion. See Young v. City

21

of Palm Bay, Fla., 358 F.3d 859, 863-64 (11th Cir. 2004) (reviewing various district court decisions made in the course of managing its docket for an abuse of discretion).

Here, in the face of the district court's discretion in managing his own docket, Wilson has not alleged on appeal that he was prejudiced by the delay in filing his motion for summary judgment, or that the district court did not apply the order equally to both parties. Without a demonstration of prejudice, there exist no grounds upon which Wilson's case should be remanded to the district court.

E. Setting Aside Default Judgment

Finally, Wilson argues that the district court abused its discretion in setting aside the default judgment that had been entered against the DCF for failing to file a timely answer to Wilson's summons. We review a district court's decision regarding a motion to set aside the entry of a default judgment for an abuse of discretion. See Gibbs v. Air Canada, 810 F.2d 1529, 1537 (11th Cir. 1987). Federal Rule of Civil Procedure 55(c) provides that, for good cause shown, a district court may set aside an entry of default. Fed.R.Civ.P. 55(c).

In granting the DCF's motion to set aside the clerk's entry of default judgment, the district court found that the DCF had shown good cause for failing timely to respond to Wilson's complaint – namely, that Wilson had not properly

22

served the complaint upon the DCF. Wilson does not argue on appeal that the district court's finding that the DCF was not properly served was incorrect. Moreover, Wilson's allegation that the district court utilized the inappropriate standard in setting aside the judgment is without merit because the district court clearly used the "good cause" standard, which Wilson admits is the proper standard. Accordingly, we conclude that the district court did not abuse its discretion in setting aside the default judgment.

## III. CONCLUSION

Wilson appeals the district court's grant of summary judgment in favor of the appellees and the denial of his motion for reconsideration. Because Wilson failed to establish a prima facie case of retaliation, because he was afforded numerous opportunities to clear his name as to the reasons given for his termination, and because the individual defendants did not violate any of Wilson's constitutional rights and were entitled to qualified immunity as to his claims against them, the district court did not err in granting the defendants' motion for summary judgment. Additionally, we discern no abuse of discretion in the district court's management of its docket by ordering the parties to delay their motions for summary judgment, or in its setting aside the entry of default judgment based on Wilson's improper service of the complaint. Accordingly, we **AFFIRM** the

23

district court's grant of summary judgment in favor of defendants and its denial of Wilson's motion for reconsideration.

Finally, because appellees' brief complies with the Federal Rules of Appellate Procedure and Wilson had the opportunity to respond to any factual allegations in his reply brief, Wilson's motion to strike is **DENIED**.