[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-12546
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cv-60621-DPG

ROZALIA WILLIAMS,

Plaintiff-Appellant,

versus

FLORIDA ATLANTIC UNIVERSITY,
Board of Trustees,
CHARLES L. BROWN, SR.,
an individual,
COREY KING,
an individual,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 30, 2018)

Before MARTIN, JULIE CARNES, and HULL, Circuit Judges.

PER CURIAM:

Rozalia Williams appeals the district court's order granting summary judgment in favor of Florida Atlantic University ("FAU") and Charles Brown in her employment discrimination action brought pursuant to 42 U.S.C. §§ 2000e-2, -3 ("Title VII"); 42 U.S.C. § 1983; and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10 et seq. On appeal, Williams argues that the district court erred by concluding that her claims for discrimination on the basis of race and sex and for retaliation were insufficient to survive summary judgment. After careful review, we affirm.

I.

Williams, an African-American woman, began working at FAU in 2001. In 2010, she was promoted to Associate Dean of Students for FAU's Broward Campuses. Corey King, the Associate Vice President and Dean of Students, and Brown, the Senior Vice President of Student Affairs, were her supervisors. On February 26, 2013, she received a security incident report involving a threat made by a student, Ryan Rotela, against his professor, Dr. Deandre Poole, following a classroom activity to which Rotela objected.[1] As part of her duties as an Associate Dean, Williams investigated the matter.

Williams spoke with Rotela, Dr. Poole, and an additional student witness. Dr. Poole expressed concerns about Rotela, and asked that he be restricted from

---

[1] Dr. Poole asked students to write "Jesus" on a piece of paper and then decide whether they felt comfortable standing on the paper.

2

returning to class.  Williams received this request on a Friday, and Dr. Poole's class was scheduled to meet on Monday.  Williams says she tried to contact King several times by phone and email on Friday to discuss how to handle the Rotela incident, but he did not respond.  Having received no response, Williams issued a Notice of Charges to Rotela, telling him not to attend class on Monday or contact Dr. Poole until the matter had been resolved.  Williams says she spoke with King on the phone on Sunday, and King approved of her actions.

Some time later, national news media began reporting on the incident between Dr. Poole and Rotela.  In response, FAU released a statement saying no student had been disciplined "as a result of any activity that took place during the class."  The statement was misleading because Rotela had been disciplined for threats he made right after class.  Rotela then released his Notice of Charges to the media, which was signed by Williams.  As a result, Williams received hundreds of phone calls and emails using threats and racial epithets.  FAU dropped all charges against Rotela.

At a staff meeting soon after this, Brown announced that FAU had dropped disciplinary charges because Williams changed the generic Notice of Charges letter without the approval of the FAU attorney.  Williams objected, saying King approved her course of action and that other Associate Deans had taken similar actions without consequences.  Brown also told Williams "they want me to give

3

you a letter of reprimand." Williams told Brown she intended to write a rebuttal to any reprimand she received. On April 26, Williams was told she was being terminated effective October 25.

Williams brought suit against the FAU Board of Trustees, Brown, and King claiming discrimination on the basis of race, gender and age, as well as retaliation for objecting to her discriminatory treatment. According to Williams, the two other Associate Deans who worked alongside her, a Hispanic man and a white woman, each handled other incidents using the same procedures she had used without suffering any consequences. Williams also noted that she was replaced as an Associate Dean by a white man. The district court dismissed Williams's retaliation and age discrimination claims against Brown and King. Williams later voluntarily dismissed her remaining claims against King.

FAU and Brown both filed motions for summary judgment, which the district court granted. The court noted that Williams attempted to raise a mixed-motive theory of discrimination for the first time in response to the motions for summary judgment. The court found this theory was not timely raised, but concluded in any event that it was without merit. The court also found that Brown was entitled to qualified immunity because he did not violate clearly established law. Last, the court rejected Williams's claim for retaliation. This appeal followed.

II.

"We review de novo a district court's grant of summary judgment, applying the same legal standards as the district court." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1263 (11th Cir. 2010). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant has met this burden, courts must view the evidence in the light most favorable to the non-movant. Alvarez, 610 F.3d at 1263–64. However, "an inference based on speculation and conjecture is not reasonable." Avenue CLO Fund, Ltd. v. Bank of Am., N.A., 723 F.3d 1287, 1294 (11th Cir. 2013) (quotation omitted).

III.

On appeal, Williams argues that she presented sufficient evidence to preclude summary judgment on her race and sex discrimination claims, as well as her retaliation claim.[2] We will address each argument in turn.

A.

Title VII, § 1983, and the Florida Civil Rights Act all prohibit discrimination on the basis of protected characteristics, including race and gender. While the

---

[2] Williams does not discuss her age discrimination claim on appeal, so that claim is abandoned. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014). Williams also continues to raise her claims against King. Because she voluntarily dismissed those claims, they are not properly before us.

5

three statutes represent separate causes of action, we apply the same legal analysis for public employment discrimination claims under all three.  See Quigg v. Thomas Cnty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016) (applying the same legal analysis to Title VII and § 1983 claims); Albra v. Advan, Inc., 490 F.3d 826, 834 (11th Cir. 2007) (per curiam) (applying the same legal analysis to Title VII and FCRA claims)

While Williams first presented a single-motive discrimination claim, she now appeals only the district court's analysis on her mixed-motive discrimination claim.  As a result, we will address only that claim.  See Sapuppo, 739 F.3d at 681. As an initial matter, Williams argues that the district court erred in determining her mixed-motive claims were untimely.  She is right.  A plaintiff is not required to "label[] [her case] as either a 'pretext' case or a 'mixed-motives' case from the beginning in the District Court . . . .  Discovery often will be necessary before the plaintiff can know whether both legitimate and illegitimate considerations played a part in the decision against her."  Price Waterhouse v. Hopkins, 490 U.S. 228, 247 n.12, 109 S. Ct. 1775, 1789 n.12 (1989).  Williams was only required to argue that her case involved mixed-motives "[a]t some point in the proceedings," which she did in opposition to the defendants' motion for summary judgment.  See id.

Even though the district court incorrectly determined Williams's motion was untimely, it nonetheless considered her claims on the merits and rejected them.

6

This was not error. In a mixed-motive discrimination case based on circumstantial evidence, a court asks "whether a plaintiff has offered evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) a protected characteristic was <u>a</u> motivating factor for the defendant's adverse employment action." <u>Quigg</u>, 814 F.3d at 1239 (quotation omitted and alteration adopted). This means that courts must determine whether the "plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that her protected characteristic was a motivating factor for an adverse employment decision." <u>Id.</u> (quotation omitted and alterations adopted).

"An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." <u>Damon v. Fleming Supermarkets of Fla.</u>, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999). Indeed, an employer has the "right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." <u>Nix v. WLCY Radio/Rahall Commc'ns</u>, 738 F.2d 1181, 1187 (11th Cir. 1984). In the end, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." <u>Id.</u>

7

The district court did not err in rejecting Williams's mixed-motive claims because she never showed that any impermissible factor played a role in her firing. FAU says it fired Williams because she did not follow University Code in handling the Rotela incident. Williams argues that she did not mishandle the Rotela incident, and instead, the decision to fire her was based at least in part on her race or gender. FAU was free to fire Williams because she did not follow University Code, because she exercised poor judgment, or even because of the severe backlash the Rotela incident brought on the university, so long as discrimination did not play any role in that decision. See id. Williams failed to show that it did. In Quigg, this Court concluded that the plaintiff met her burden by showing that several members of a school board made statements indicating that gender bias was a motivating factor in an adverse employment action. 814 F.3d at 1241. In her case, Williams did not allege any facts to indicate that her gender or race impacted the decision to fire her. And Williams's attempt to show that she was treated differently from her white and Hispanic colleagues is unavailing when everyone acknowledges that the Rotela incident resulted in unprecedented backlash against the university. As a result, Williams has failed to provide sufficient evidence for a jury to find, by a preponderance of the evidence, that her race or gender were a factor in her firing. See id. at 1239. We affirm the district court's

8

grant of summary judgment to FAU and Brown on Williams's race and gender discrimination claims.

B.

Title VII, § 1983, and the Florida Civil Rights Act also prohibit employers from discriminating against an employee based on her opposition to an unlawful employment practice.  See 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 1983;  Fla. Stat. § 760.10(7).  A claim for retaliation based on circumstantial evidence is analyzed according to the McDonnell Douglas burden-shifting analysis.  Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010).  To make a prima facie case of retaliation, a plaintiff must show: "(1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action."  Chapter 7 Trustee v. Gate Gourmet, Inc., 683 F.3d 1249, 1258 (11th Cir. 2012) (quotations omitted).

Once a prima facie case is established, the employer must produce a legitimate reason for the adverse employment action.  Shannon v. BellSouth Telecomms., Inc., 292 F.3d 712, 715 (11th Cir. 2002).  Then when the employer gives a legitimate reason, the plaintiff must show that this reason is a pretext for retaliation.  Id.  An employer's reason may be shown to be pretextual "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions"

9

in it "that a reasonable factfinder could find them unworthy of credence." Springer v. Convergys Customer Mgmt. Grp., 509 F.3d 1344, 1348 (11th Cir. 2007) (per curiam) (quotation omitted). A reason cannot be a "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993) (quotation and emphasis omitted).

Here, the district court did not err by granting summary judgment on Williams's retaliation claims. Even assuming, as the district court did, that Williams stated a prima facie case of retaliation by opposing a likely reprimand and being fired shortly thereafter, she failed to show that FAU's reasons for firing her were pretexts for retaliation. FAU said it fired Williams for not following University Code and mishandling the Rotela incident. Williams has failed to show those reasons were so implausible as to find them unworthy of credence. See Springer, 509 F.3d at 1348. FAU experienced significant negative publicity because of its handling of the Rotela incident. Even if it seems that FAU unfairly blamed Williams for the fallout, FAU's response was still legitimate and non-discriminatory, see Nix, 738 F.2d at 1187, and Williams failed to point to evidence that FAU actually fired her to retaliate against her for opposing a reprimand. The district court did not err in granting summary judgment to FAU on Williams's retaliation claims. See Hicks, 509 U.S. at 515, 113 S. Ct. at 2752.

10

**AFFIRMED.**