[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11432
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cv-01348-HES-JBT

TRUDY CALLAHAN,

Plaintiff-Appellant,

versus

CITY OF JACKSONVILLE, FLORIDA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 26, 2020)

Before NEWSOM, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

Trudy Callahan, a member of the Jacksonville Sheriff's Office ("JSO"), sued her employer, the City of Jacksonville, alleging discriminatory and retaliatory hostile-work environment and retaliation claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3. She complained that the JSO created a hostile work environment by selectively disciplining her and, after her complaint to the Equal Employment Opportunity Commission ("EEOC"), retaliated against her by transferring her from the night shift to the day shift. She now appeals the district court's grant of summary judgment in favor of her employer. After careful review of the record, we affirm.

\* \* \*

The parties are familiar with the facts, and we will not repeat them here except as necessary to decide the case.

We review the grant of summary judgment de novo, "applying the same legal standards as the district court." *Alvarez v. Royal Atl. Developers*, *Inc*., 610 F.3d 1253, 1263 (11th Cir. 2010). The question is whether the evidence, when viewed in the light most favorable to Callahan as the nonmoving party, shows that no genuine issue of material fact exists, and that JSO is entitled to judgment as a matter of law. *Id.* at 1263–64.

2

# I

Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive work environment." *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016) (quotation omitted). To prove a *prima facie* case for hostile work environment, the plaintiff must establish that: (1) "she belonged to a protected group"; (2) "she was subjected to unwelcome harassment"; (3) "the harassment was based on a protected characteristic"; (4) "the harassment was sufficiently severe or pervasive to alter the terms and conditions of . . . her employment and create an abusive working environment"; and (5) "a basis exists for holding the employer liable." *Id.*

The requirement that the harassment be "severe or pervasive . . . contains both an objective and a subjective component." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). "Thus, to be actionable, this behavior must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive." *Id.* (alteration and ellipses in original) (quotation omitted). "In evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive

3

utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Id.* Title VII gives rise to liability for hostile work environment only in the case of a workplace that is "permeated with discriminatory intimidation, ridicule, and insult," not (for better or worse) "the mere utterance of an . . . epithet. *Id.* at 1276–77 (ellipses in original) (quotation omitted). With respect to severity, a court may consider slurs not directed at the plaintiff or not made in the plaintiff's presence as evidence of a hostile environment. *See Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1290 (11th Cir. 2008). Title VII, though, "is not a federal civility code." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (quotation omitted) (discussing sexual harassment). Accordingly, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation omitted). "[C]ourts should examine the conduct in context, not as isolated acts, and determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." *Mendoza*, 195 F.3d at 1246.

As an initial matter, it is unclear whether the alleged harassment—most of which occurred in the context of official JSO counseling or disciplinary action—

4

resulted from Callahan's gender or because she engaged in statutorily protected activity. *See Gowski v. Peake*, 682 F.3d 1299, 1312 (11th Cir. 2012) (recognizing a retaliatory hostile-work-environment claim). Most of the relevant conduct occurred after Callahan was promoted to lieutenant in 2011 and took on more responsibilities, which the record shows she struggled to fulfill. She did not raise claims of gender discrimination until after JSO's Internal Affairs division asked her about it.

Far from being singled out and harassed, Callahan's disciplinary treatment seems fairly run-of-the-mill—the JSO regularly counsels, disciplines, and investigates officers with performance issues and has a legitimate interest in ensuring officers comply with JSO policy. The record here shows that outspoken male officers were also disciplined and, in one instance, demoted.

In any event, Callahan has not demonstrated that the alleged harassment unreasonably interfered with her job performance. Callahan was promoted to sergeant in 2006 and lieutenant in 2011, both on her first attempt. Since 2011, Callahan has achieved acceptable performance reviews and has not been denied a pay raise or promotion. Her transfer to the day shift for a year did not affect her rank or responsibility, and she was later transferred back to the night shift.

The district court did not err in granting summary judgment to the City on Callahan's discriminatory and retaliatory hostile-work-environment claims.

5

Callahan failed to establish that the alleged harassment was severe or pervasive enough to alter the terms and conditions of her employment. The JSO has a legitimate interest in ensuring that its officers comply with its policy, the alleged gender-related insults occurred sporadically or were heard secondhand, and Callahan's job performance was not affected. Accordingly, we affirm the district court's grant of summary judgment to the City as to Callahan's hostile-work-environment claims.

## II

The district court concluded that Callahan failed to establish a causal link between her protected activity and the alleged adverse employment action. On appeal, Callahan argues that causation can be inferred because of the close temporal proximity between the protected activity and the alleged retaliation. She also asserts that the reason the City gave for her shift transfer was pretextual.

Title VII prohibits retaliation by an employer against an individual because the individual has opposed any practice prohibited by Title VII or made a charge of discrimination. *See* 42 U.S.C. § 2000e-3(a). A retaliation claim based on circumstantial evidence is analyzed according to a burden-shifting framework. *See Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016) (discussing generally *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1993)). In order to establish a *prima facie* case for retaliation, a plaintiff must show that:

6

(1) she "engaged in a statutorily protected activity"; (2) she "suffered a materially adverse action"; and (3) there was a "causal relation between" the protected activity and the adverse action. *Goldsmith*, 513 F.3d at 1277.

A causal link between protected expression and the materially adverse action arises where the defendant was aware of the protected activity and took materially adverse action as a result. *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002). Causation must be established according to traditional principles of but-for causation, which requires "proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). Causation may be inferred by "close temporal proximity between the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). A period of several months between the protected activity and adverse employment action will not establish causation. *Id.*

If a *prima facie* claim is made, the burden shifts to employer to proffer a legitimate, non-retaliatory reason for the adverse action. *See Meeks v. Computer Assocs. Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994). Then, the burden shifts back to the employee to demonstrate that the proffered reasons were pretext for retaliation. *Id.* To establish pretext, the plaintiff must show that the proffered reason was false and that the real reason was discrimination. *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  The plaintiff may accomplish this by producing "sufficient evidence to allow a reasonable finder of fact to conclude that the [employer's] articulated reasons were not believable."  *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006).  An employee must meet the employer's proffered reason "head on and rebut it."  *Chapman v. Al Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc) ("[T]he employee cannot succeed by simply quarreling with the wisdom of that reason.").  If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment.  *Id*. at 1037.  If the plaintiff fails to show pretext, we will affirm the grant of summary judgment on that ground.  *Id.*

Callahan's retaliation claim fails to demonstrate a causal relationship between her transfer to the day shift and any statutorily protected activity.  She has therefore failed to establish a *prima facie* claim.  *Goldsmith,* 513 F.3d at 1277.  Accordingly, the district court correctly granted summary judgment to the City on her retaliation claim

Most of what could possibly qualify as statutorily protected activity[1] did not occur within a sufficiently close temporal proximity to her transfer in June 2014 to

---

[1] Callahan's opposition to the JSO's curfew policy does not qualify as statutorily protected activity because Title VII protects only opposition to employment practices prohibited by Title VII, not illegal conduct generally.  *See* 42 U.S.C. § 2000e-3(a).

support an inference of causation.  She first threatened to complain about the discipline and investigations against her in July 2013, 11 months before her transfer.  She complained to Internal Affairs about the selective discipline arising from her opposition to the JSO's curfew policy in September 2013, eight to nine months before her transfer.  She clarified to Internal Affairs that her complaint alleged gender discrimination in January 2014, five to six months before her transfer.  The Internal Affairs investigation ended that March, three to four months before her transfer.  None of those events occurred close enough to her transfer to lead to an inference of causation.  *See Thomas*, 506 F.3d at 1364.

Callahan alleges a single incident that occurred within a sufficiently close temporal proximity to support an inference of causation—her confrontation with Assistant Chief Johnson in May or June of 2014.  *Id.*  Callahan has not alleged, however, and the record does not show, that then-Undersheriff Dwain Senterfitt— the decisionmaker behind her transfer—knew of that confrontation.  *Shannon*, 292 F.3d at 716.  In any event, Callahan has not shown that Senterfitt's proffered reason for the transfer—that she needed more supervision than available on the night shift—was pretextual.  *St. Mary's Honor Ctr.*, 509 U.S. at 515.  Her argument that her positive performance review at that time did not justify a transfer essentially quarrels with the reason for Senterfitt's decision, and she does not show that the real reason for Senterfitt transferring her was retaliatory animus for her

9

confrontation with Assistant Chief Johnson.  Accordingly, the district court properly granted the City's motion for summary judgment on Callahan's retaliation claim.

## III

After reviewing the record, we affirm the grant of summary judgment in the City's favor on both Callahan's hostile-work-environment and retaliation claims. Callahan failed to establish that the alleged harassment was severe or pervasive enough to alter the terms and conditions of her employment, or establish a *prima facie* case of retaliation after she engaged in statutorily protected activity.

**AFFIRMED.**