[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-11328; 14-13204

_____

D.C. Docket No. 2:12-cv-00277-MEF-CSC


NORIA C. GREEN,

Plaintiff-Appellant,

versus

MOBIS ALABAMA, LLC,
JEREMY POWERS,

Defendants-Appellees.


_____

Appeals from the United States District Court
for the Middle District of Alabama

_____

(May 26, 2015)

Before HULL, ANDERSON, and FARRIS,[*] Circuit Judges.

PER CURIAM:

Plaintiff Noria Green ("Green") sued defendant MOBIS Alabama, LLC ("MOBIS"), a manufacturer of automobile parts, alleging: (1) violations of Title VII for sexual harassment, gender discrimination, and retaliation; (2) violations of the Family and Medical Leave Act ("FMLA"); (3) violations of the Equal Pay Act; and (4) various state law tort claims.[1]  The district court granted summary judgment to defendant MOBIS on all claims and later denied a Rule 60(b) motion to set aside the judgment in favor of MOBIS.  Green appeals, arguing that: (1) the district court erred in granting summary judgment on Green's retaliation claims brought under Title VII and the FMLA; (2) issue preclusion principles bar MOBIS from raising certain factual defenses to Green's retaliation claims; (3) the district court erred in granting summary judgment on Green's Equal Pay Act claim; and (4) the district court abused its discretion in denying Green's Rule 60(b) motion.[2]

---

[*]Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1]Plaintiff Green also brought state law claims against defendant Jeremy Powers individually.  Powers did not move for summary judgment and is not a party to this appeal.

[2]Green does not appeal the grant of summary judgment as to her sexual harassment, gender discrimination, FMLA interference, or state law tort claims.  Her remaining retaliation claims turn entirely on her allegedly retaliatory termination.  Green thus has abandoned any of the other claims in her amended complaint.  See Norelus v. Denny's, Inc., 628 F.3d 1270, 1296–97 (11th Cir. 2010) (stating that it is "by now well settled in this Circuit that a legal claim or

2

After review of the parties' briefs, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

**A.    Alleged Sexual Harassment by Defendant Powers**

On February 21, 2005, Plaintiff Green began working for defendant MOBIS. At the times relevant to this lawsuit, Green worked in the Paint Department at MOBIS.  In December 2010, Jeremy Powers began working the same shift in the Paint Department that Green worked.  Powers was a Team Leader, which is an hourly-paid, non-supervisory position.  In April 2011, Powers was promoted to a supervisor position, subject to a training period.  Plaintiff Green alleged that, in January 2011, Powers began sexually harassing her by sending inappropriate text messages (including graphic pictures), staring at her, making untoward comments, and touching her inappropriately.

On April 6, 2011, Green anonymously reported Powers's harassment through MOBIS's UPLINK system, which consisted of suggestion boxes placed around the facility.  It is undisputed that this method of reporting was not consistent with MOBIS's policies concerning the reporting of sexual harassment. Nonetheless, in late May or early June 2011, MOBIS sought a response and formal

---

argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed") (quotation marks omitted).

complaint from the still-anonymous UPLINK submission and MOBIS management also began an investigation into Powers's behavior.  During the investigation, MOBIS interviewed Green, among other employees, who verbally reported Powers's harassment.  On June 21, 2011, Powers was terminated.[3]

## B.    EEOC Claim and Alleged Retaliation

Also on June 21, 2011, Green submitted her first charge of discrimination with the Equal Opportunity Employment Commission ("EEOC").  Green alleged sex discrimination based on Powers's sexual harassment as well as retaliation.  That retaliation claim concerned Green's alleged removal from a Team Leader position following her complaints of sexual harassment.

Following defendant Powers's April 2011 promotion to Supervisor, plaintiff Green was told that she would become an "Active" or "Acting" Team Leader while Powers transitioned to the Supervisor position.  Green was not told she would receive an increase in pay, and she did not receive formal training for the Team Leader position.  Green performed some, but not all, of the functions of a Team Leader, and it was common for Team Members to perform the functions of Team Leaders when necessary, regardless of official status.

---

[3]The district court order more thoroughly recounts the factual background of plaintiff Green's reporting of the behavior and the subsequent investigation by defendant MOBIS.  Green v. MOBIS Alabama, LLC, 995 F. Supp. 2d 1285, 1293-94 (M.D. Ala. 2014).  Because plaintiff Green appeals only as to the alleged retaliatory termination, we need not here recount the course of the reporting and investigation.

4

No official MOBIS records reveal Green was promoted to Team Leader. An unofficial telephone directory created by a receptionist identified Green as a Team Leader, but Green identified herself as a "Paint Color Tester" on a pre-request for FMLA leave and as a "Color Code Tester" on her EEOC intake form.

## C.    FMLA Authorization

In May 2011, Green requested and, in June 2011, received approval for leave under the FMLA to take her father to doctor's visits. MOBIS requires employees to first substitute accrued vacation days for FMLA leave. MOBIS also confirms doctor's appointments for employees who submit copies of doctor's excuses, rather than originals, when requesting FMLA leave. MOBIS records include doctor's notes for days in June 2011 for which Green used accrued vacation days.

In October 2011, after Green had exhausted accrued vacation days, MOBIS received a copy of a doctor's note from Extended Arm Physicians referring Green's father for an appointment on October 17–18, 2011. MOBIS's FMLA coordinator (the "FMLA coordinator") noticed that the doctor's referral note for that appointment appeared identical to a note Green submitted for FMLA leave for her father's doctor's visits on June 21–22, 2011. The FMLA coordinator called the doctor's office and verified that Green was not at the doctor's office with her father on October 17–18, 2011. It is undisputed that plaintiff Green did not attend work

5

on October 17, 2011, but rather attended a recital at her son's school. It is also undisputed that she worked a twelve-hour shift on October 18, 2011.

At that time, the FMLA coordinator had no knowledge of Green's harassment complaint against Powers. The FMLA coordinator did not participate in the investigation of that complaint or Powers's termination.

On October 28, 2011, MOBIS managers met with Green to inform her that they were investigating what they believed were falsified doctor's notes that Green had submitted for FMLA leave. On November 4, 2011, Green again met with MOBIS management. Green was informed that MOBIS had verified her doctor's notes and that they believed she had provided falsified documents in requesting FMLA leave. MOBIS then informed Green that it was terminating her for falsifying doctor's excuses. It is undisputed that, had Green provided forged doctor's notes to MOBIS, this would have been grounds for termination.

Green claims that she submitted neither the June nor the October doctor's notes to MOBIS and that she has no idea how MOBIS came to have doctor's notes for her father in its possession. Green filed a second EEOC charge on November 28, 2011, alleging her termination was retaliation for her filing a June 21, 2011 charge of discrimination based on Powers's conduct.

6

**D.    Unemployment Benefits**

Following her termination on November 4, 2011, Green filed for unemployment compensation benefits but was deemed ineligible on the grounds that she was terminated for misconduct.  Green appealed this denial to the Alabama Department of Industrial Relations (the "ADIR").

On December 16, 2011, the ADIR hearing officer conducted an initial telephone hearing, at which a MOBIS representative was present.  The hearing officer, however, concluded that she could not hold the hearing without the doctor's notes that had formed the basis of Green's termination.  The hearing officer then continued the hearing to a later, unspecified date.  The hearing officer stated that her docket clerk would select a new date and time and that the parties would receive notice of the new date and time by mail.  On December 21, 2011, the ADIR mailed notices to Green and MOBIS stating that the appeal hearing would be re-convened on January 4, 2012.  MOBIS's plant was shut down for the 2011 holiday season from approximately December 23, 2011 through January 2, 2012.  The mailed notice was not processed in time for MOBIS's representative to learn the date of the hearing.  As a result, no representative from MOBIS was present at the January 4, 2012 telephone hearing.

Records of the January 4, 2012 hearing reveal that the ADIR hearing officer attempted to contact the MOBIS representative by phone without success.  The

7

ADIR hearing officer then proceeded to conduct the hearing, by telephone, with Green and her counsel. The hearing officer then issued a decision concluding Green was not terminated for misconduct that would disqualify her from receiving unemployment compensation benefits under Alabama law.[4] The ADIR's Board of Appeals denied MOBIS's request for an appeal of that determination.

## E.    The District Court Proceedings

On March 27, 2012, Green filed her initial complaint against defendant MOBIS and defendant Jeremy Powers individually. On November 2, 2012, Green filed her Amended Complaint asserting these claims: (1) Title VII sexual harassment (quid pro quo and hostile environment), (2) Title VII gender discrimination, (3) Title VII retaliation, (4) negligent and wanton hiring, training, supervision and retention, (5) invasion of privacy, (6) assault and battery, (7) intentional infliction of emotional distress, (8) Equal Pay Act violations, and (9) FMLA interference and opposition.

On October 21, 2013, following extensive discovery, defendant MOBIS filed a motion for summary judgment. While the motion was pending, the case moved toward trial, which was set for February 10, 2014.

---

[4]The hearing officer's written decision, in the section titled "FINDINGS," stated: "The employer discharged the claimant believing she had provided a falsified note for October 17, and 18, 2011. However, the claimant worked on October 18, 2011, and did not provide a note for either day."

On February 5, 2014, the district court granted summary judgment in MOBIS's favor on all of Green's claims.  Regarding Green's Title VII claims for sexual harassment and gender discrimination (not before us on appeal), the district court held that MOBIS had established both elements of the Faragher–Ellerth affirmative defense because (1) MOBIS took reasonable care to prevent and to promptly correct Powers's sexual harassment and (2) Green unreasonably failed to use MOBIS's preventive measures or to avoid harm.[5]  Green v. MOBIS Ala., LLC, 995 F. Supp. 2d 1285, 1304 (M.D. Ala. 2014).  The district court also granted judgment in favor of defendant MOBIS on Green's retaliation claims under Title VII and Green's FMLA claims, as well as Green's state law claims.  Id. at 1307–10.

On March 4, 2014, Green filed a Rule 59(d) motion to alter or amend that judgment, which the district court denied on March 6, 2014.  On March 26, 2014, Green filed a notice of appeal as to the grant of summary judgment.

Subsequently, on April 29, 2014, Green filed a Rule 60(b) motion to set aside the judgment based on newly discovered evidence and what Green termed "Fraud Upon the Court."  Green argued that a subpoena for documents from one of the two doctor's offices had been altered by MOBIS or MOBIS's counsel in a

---

[5]See Faragher v. City of Boca Raton, 524 U.S. 775, 807–08, 118 S. Ct. 2275 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765, 118 S. Ct. 2257, 2270 (1998).

manner that concealed relevant documents from Green and her counsel. Specifically, the documents disclosed to Green did not include the originals of the June 2011 appointments on which the allegedly fake October 2011 appointment notes were based. Green argued, as she does here, that material differences in the June originals and the copies in MOBIS's possession support her claim that she did not provide forged documents.

On June 23, 2014, the district court denied Green's Rule 60(b) motion. The district court held that Green and her counsel had not exercised due diligence to discover the allegedly new evidence nor shown that such evidence would produce a different result. Separately, the district court found that Green's accusations about the alteration of a subpoena and defense counsel misconduct were "reckless and utterly without merit" and that there was "absolutely no evidence of any intentional misconduct" by defense counsel.

Green timely appealed the denial of the Rule 60(b) motion. This Court consolidated the appeals.

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same legal standard used by the district court. Johnson v. Bd. of Regents of Univ. of Ga., 263 F.3d 1234, 1242 (11th Cir. 2001). We draw all factual inferences in the light most favorable to the non-moving party, here plaintiff

Green.  Id. at 1242–43.  Summary judgment is appropriate where "there is no genuine [dispute] as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986)(quotation marks omitted); Fed. R. Civ. P. 56(a).  To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  The plaintiff must present evidence demonstrating that it can establish the basic elements of its claim, Celotex, 477 U.S. at 322, 106 S. Ct. at 2552, since "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage.  Evers v. Gen. Motors Corp., 770 F.2d 984, 986 (11th Cir. 1985).

A district court's order under Rule 60(b) is reviewable only for abuse of discretion.  Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l. Ins. Co., 198 F.3d 1332, 1338 (11th Cir. 1999).

### III.  DISCUSSION

#### A.    Retaliation Under Title VII

To establish a prima facie case of retaliation under Title VII, plaintiff Green must demonstrate: (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that the adverse employment

11

action was causally related to the protected activity.  See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998).  In the context of a retaliation claim, an adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Crawford v. Carroll, 529 F.3d 961, 974 (11th Cir. 2008) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006)).  If the employee establishes a prima facie case of retaliation, then the burden shifts to the employer to produce legitimate reasons for the adverse employment action. Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 715 (11th Cir. 2002).  If the employer does so, the employee must then show that the reasons given by the employer were pretextual.  Id.

There is no dispute that: (1) MOBIS had in its possession copies of doctor's notes for appointments with Green's father's physicians for June 21–22, 2011, and October 17–18, 2011; (2) Green's father had doctor's appointments on June 21–22, 2011, but did not have them on October 17–18, 2011; and (3) MOBIS fired Green for submitting false notes for the October dates.  Green's principal retaliation claim concerns her allegation that she did not submit the falsified doctor's notes that served as the basis for termination, but rather that some unknown agent within MOBIS falsified these October 17–18 notes to engineer Green's departure in retaliation for her sexual harassment claims.

This is where plaintiff Green's claim falls short. It is evident from viewing the doctor's notes in question that a reasonable person would believe the October notes were identical copies of the June notes with only the dates having been changed. This is how it appeared to MOBIS's FMLA coordinator, who verified that Green was not at the doctor with her father on those dates. Because the FMLA coordinator had no knowledge of Green's complaints of sexual harassment, she could not have been motivated by a desire to retaliate against Green. Separately, it is undisputed that, if Green did submit falsified doctor's notes to MOBIS, its termination of Green would have been justified and made on the basis of non-retaliatory reasons.

Green thus asks the Court to find a triable issue of fact on whether MOBIS, four months after Powers was terminated, fabricated doctor's notes for October 17–18, 2011, to retaliate against Green on the basis of Green's complaints against Powers. We cannot do so because MOBIS received what it reasonably believed to be forged doctor's notes from Green and terminated her accordingly. See E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) (holding that employer's good faith belief that employee had lied in an internal investigation constituted a legitimate non-retaliatory reason for terminating employee regardless of whether employee had actually engaged in misconduct).

There is simply no evidence for Green's alternative theory, and mere speculation is not sufficient to overcome summary judgment.  See Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1318 (11th Cir. 2011) (stating that "evidence[ ] consisting of one speculative inference heaped upon another" was "entirely insufficient" to overcome summary judgment); Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (quotation marks omitted).  What evidence we have shows that MOBIS terminated Green for a non-retaliatory reason, namely, its good faith belief that she submitted falsified doctor's notes.

As the district court held, Green's FMLA retaliation claim is based on the exact same facts as her Title VII retaliation claim.  See, e.g., Smith v. Bellsouth Telecomms., Inc., 273 F.3d 1303, 1314 (11th Cir. 2001).  For the same reasons as her Title VII retaliation claim, Green has failed to raise a genuine dispute of fact that MOBIS retaliated against her for engaging in statutorily protected activity under the FMLA.

## B.    Issue Preclusion

Green argues that the district court erred in determining that the ADIR's decision in the unemployment-benefits context precludes MOBIS from arguing that Green was terminated for presenting false doctor's notes.  We look here to

14

Alabama law because federal courts give a state administrative agency's factual findings the same preclusive effect to which they would be entitled in the state's courts.  Univ. of Tenn. v. Elliott, 478 U.S. 788, 799, 106 S. Ct. 3220, 3226 (1986).

The Alabama courts have addressed whether a finding in an administrative unemployment-benefits hearing, involving an employer and an employee, has issue preclusive effect in an employee's subsequent state court lawsuit against the employer.  In Wal-Mart Stores, Inc. v. Smitherman, the employer terminated the employee for misconduct connected with her work after a "profane and derogatory remark" the employee allegedly made about the district manager of the pharmacy department where she worked.  743 So. 2d 442, 443 (Ala. 1999), overruled on other grounds by Ex parte Rogers, 68 So. 3d 773 (Ala. 2010).  In the unemployment-benefits claim hearing, the examiner found the employee was discharged "for using profanity and/or abusive language on the job" and that her action had constituted misconduct in connection with her work.  Id. at 444.

The employee subsequently sued the employer in state court for retaliatory discharge under Alabama Code § 25-5-11.1 (1975).  Id.  The Alabama Supreme Court noted that, "under the particular facts of [that] case," the unemployment benefits claims and the retaliatory discharge claims, as the employer argued, "share[d] one central issue: the reason for her termination."  Id. at 445.  The Alabama Supreme Court determined that the issue of whether the employer, Wal-

15

Mart, discharged the plaintiff employee for making a profane and derogatory remark about a superior was present in both the unemployment-compensation proceeding and the retaliatory-discharge action. Id. at 446. After determining that the employee had an adequate opportunity to present evidence and litigate the reason for her discharge in the unemployment-benefits hearing and that the hearing officer had made a fact finding that she was terminated for making a derogatory and profane remark, the Alabama Supreme Court concluded she was estopped from relitigating, in the state court retaliatory-discharge claim, the reason for her discharge. Id. at 447-48; see also Wal-Mart Stores, Inc. v. Hepp, 882 So. 2d 329, 332 (Ala. 2003), overruled on other grounds by Ex parte Rogers, 68 So. 3d 773 (Ala. 2010) (same).

In Hale v. Hyundai Motor Mfg. Ala., LLC, the Alabama Court of Civil Appeals addressed whether a finding by the ADIR—that an employee's admitted violation of attendance policies did not constitute misconduct—had preclusive effect against an employer in the employee's subsequent state court litigation for retaliatory discharge. 86 So. 3d 1015, 1024–25 (Ala. Civ. App. 2012). In Hale, a paint department employee of an auto parts manufacturer was terminated for failure to adhere to the company's attendance policy (and specifically for failure to provide documentation of days missed for health-related reasons). Id. at 1019. The employee filed for unemployment-compensation benefits, which the hearing

16

officer awarded, finding that the employee's violation of the company's attendance policy was not "misconduct" under the meaning of the unemployment-compensation benefits statute. Id.; see Davis v. Dep't of Indus. Relations, 465 So. 2d 1140, 1142 (Ala. Civ. App. 1984) (defining "misconduct" in Alabama's unemployment-benefits statute as involving "deliberate, willful, or wanton disregard" by the employee).

The employee subsequently fired a retaliatory-discharge action against the employer in state court, where he argued that the employer should be barred from arguing that the employee was discharged for violations of the attendance and other company policies. Hale, 86 So. 3d at 1019-20. The Alabama Court of Civil Appeals held that employer should not be estopped from raising such argument because "the issues are not identical as a result of the posture of the parties." Id. at 1024. Specifically, the unemployment-benefits "determination was not a determination that the reason for [the employee's] discharge from employment was not valid . . . ." Id. That court made clear that, "[u]nlike the posture of the appeal[ ] in Smitherman[,] . . . [the employee in Hale] was found not to have committed misconduct . . . that would disqualify him from unemployment-compensation benefits." Id. But that "d[id] not compel the conclusion that the employer had no valid reason to discharge him or her or that the employer wrongfully discharged the employee." Id. at 1025. The employer could not be

17

estopped from arguing that the employee had been validly terminated for the proffered reason—violation of the company's policies—even if that violation did not rise to the level of misconduct under Alabama law.  Id.

Similarly, the problem here for Green is that there is no identity of issues when an employee uses a finding of no misconduct by the ADIR to support a federal retaliatory discharge claim.  As the district court noted, an employer may have reasonable grounds for discharging an employee that fall below the threshold necessary to constitute "misconduct" in the unemployment-benefits context given Alabama's definition of "misconduct" for that context.  That holds true here.[6] MOBIS good-faith belief, dispositive here, was not litigated and determined in the ADIR hearing.[7]

## C.    Equal Pay Act

Green also argues that the district court erred in granting summary judgment on her Equal Pay Act claim.  The district court so held because Green was never actually promoted to the Team Leader position.  Because Green was never formally a Team Leader, MOBIS was not required to pay her as one.

---

[6]The hearing officer made a fact finding that MOBIS "believ[ed] that [Green] had provided a falsified note," but determined, based on the evidence available at the hearing, that Green did not provide the note.  See supra note 4.  There was no determination by the hearing officer whether that was a good-faith belief because that was not the issue in the ADIR hearing.

[7]We deny Green's motion to certify this issue to the Alabama Supreme Court.

18

To establish a prima facie case under the Equal Pay Act, Green would have to show (1) that she was actually promoted to a Team Leader position and (2) that, unlike her male counterparts, she did not receive Team Leader pay.  See Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989).  She cannot establish the former.

Record evidence does show that Green, at her supervisor's request, performed some Team Leader functions while defendant Powers, who was then still her assigned Team Leader, completed Supervisor training, and that subsequent to Powers's termination she served as "Acting Team Leader" until the new Team Leader moved onto her shift.  It is undisputed that "Acting Team Leaders" do not receive Team Leader pay.  No official MOBIS documents show that Green was promoted to the Team Leader position.

Since Green was never a Team Leader, there was no adverse employment action or pay disparity by MOBIS.  The district court correctly held that MOBIS cannot be liable for failing to pay Green for a promotion she never received.

**D.    The Rule 60(b) Motion**

In her separately filed appeal, Green argues the district court abused its discretion in denying her Rule 60(b) motion to set aside the judgment based on "newly discovered evidence."  In order for the district court to grant relief based

19

upon newly discovered evidence under Rule 60(b)(2), Green had to satisfy a five-part test:

> (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

Waddell v. Hendry Cnty. Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003).

MOBIS argues that Green cannot meet a single one of these requirements. We need not go that far to determine that the district court did not abuse its discretion in denying the motion.  The alleged "newly discovered evidence" consists of her father's medical records to which Green had access throughout the course of the litigation.  Green discovered these files when a legal assistant for plaintiff's counsel examined the files at the office of one of the doctors from which Green had provided appointment notes.  But the potential relevance of such notes was clear from the outset.  We hold that the district court did not abuse its discretion in determining that Green failed to exercise due diligence to discover such evidence.  We need not address, then, MOBIS's remaining quarrels with Green's Rule 60(b) motion.

## IV.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of defendant MOBIS as well as the district court's denial of plaintiff Green's Rule 60(b) motion.

**AFFIRMED.**