[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13463
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-23924-KMW

AMEER SIDDIQUI,

Plaintiff-Appellant,

versus

NETJETS AVIATION, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(May 31, 2019)

Before NEWSOM, BRANCH, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Ameer Siddiqui appeals the district court's grant of summary judgment in favor of his former employer, NetJets Aviation, Inc.  First, Siddiqui, a Muslim of Pakistani descent, argues that the district court erred in granting summary judgment for NetJets on his discrimination claims under 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981, based on its finding that he failed to show that NetJets's proffered reasons for placing him on administrative leave, unreasonably extending that leave, and ultimately terminating him were pretexts for discrimination. Second, Siddiqui argues that the district court erred in granting summary judgment for NetJets on his retaliation claims under the same statutory provisions, based on its finding that he did not demonstrate causation between any protected activity and an adverse employment action.  We agree with the district court—Siddiqui has failed to demonstrate a genuine issue of material fact as to either discrimination or retaliation; accordingly, summary judgment in NetJets's favor is appropriate.

The facts are known to the parties; we repeat them here only as necessary to aid in our analysis.

**I**

We review a grant of summary judgment *de novo*, viewing all facts in the record in the light most favorable to the nonmovant and drawing all inferences in his favor.  *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001).  Summary judgment is appropriate where "there is no genuine dispute as to

any material fact." Fed. R. Civ. P. 56(a). To overcome a motion for summary judgment, the nonmoving party must present more than a scintilla of evidence supporting his position—rather, "there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1162 (11th Cir. 2006) (citation omitted).

Looking first to Siddiqui's discrimination claims, Title VII prohibits an employer from intentionally discriminating against an employee based on his race, religion, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). Similarly, 42 U.S.C. § 1981 protects employees against racial discrimination. *See* 42 U.S.C. § 1981(a); *see also Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Section 1981 and Title VII discrimination claims are analyzed under the same framework. *Standard*, 161 F.3d at 1330.

When an employee's discrimination claim is based on circumstantial evidence, we generally use the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under this framework, a plaintiff must present a *prima facie* case of discrimination. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Then, the burden shifts to the employer to articulate one or more legitimate, nondiscriminatory reasons for its action. *Id.* If it does so, the burden shifts back to the plaintiff to produce evidence that the employer's proffered reasons are a pretext

3

for discrimination.  *Id.*  A legitimate nondiscriminatory reason proffered by the employer is not a "pretext *for discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (quotation marks omitted).  "The court must, considering all the evidence, ascertain whether the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons were not what actually motivated its conduct."  *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quotation marks omitted).  An employee must meet his employer's proffered reason "head on and rebut it."  *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (*en banc*).  When an employer asserts misconduct by an employee as the legitimate reason for its action, the pretext inquiry focuses on the employer's beliefs and whether the employer was dissatisfied with the employee for nondiscriminatory reasons, "even if mistakenly or unfairly so."  *Alvarez*, 610 F.3d at 1266; *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (noting that inquiry is not whether the employee was indeed guilty of misconduct but whether the employer in good faith believed so, and whether this belief was the reason for the termination).

In *Flowers v. Troup County, Georgia, School District*, for example, we held that the plaintiff had not offered sufficient evidence of pretext to allow a

reasonable jury to infer that the school district's true motivation for terminating him was racially discriminatory. 803 F.3d 1327, 1337–38 (11th Cir. 2015). We explained that the school district's "ham-handed investigation and actions singling out" the plaintiff could have led a reasonable jury to conclude that the superintendent "had it in" for the plaintiff from the start. *Id.* at 1338. Yet because the plaintiff offered no evidence "that the investigation was pretext of *discrimination on the basis of his race*," we held that "[e]ven if [the superintendent's] purported explanation for his decision to fire [the plaintiff] had been a bald-faced lie," the plaintiff's claims still could not survive summary judgment. *Id.* at 1339. "Put frankly," we explained, "employers are free to fire their employees for 'a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'" *Id*. at 1338 (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)).

To the extent that an employee seeks to show discrimination via disparate treatment of comparators, those individuals must be "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (*en banc*). The analysis of comparators should be conducted at the *prima facia* stage of *McDonnell Douglas*'s burden-shifting framework, rather than during the pretext stage. *Id.* Nevertheless, "[e]vidence necessary and proper to support a

plaintiff's *prima facie* case may of course be used, later as it were, to demonstrate that the defendant's explanation for its conduct was pretextual." *Id.* at 1223 n.9. We must also keep in mind that differences in treatment of different comparators by different decisionmakers can rarely be the basis for a viable discrimination claim. *Silvera*, 244 F.3d at 1261 n.5.

Turning to Siddiqui's case, even if we were to assume that he has shown that NetJets's reasons for placing him on administrative leave and extending his leave were false, that does not necessarily entitle him to get past summary judgment. *See Alvarez*, 610 F.3d at 1264.[1] Like the school district in *Flowers*, NetJets's arguably "ham-handed investigation" and unreasonable delay in resolving the situation could perhaps lead a jury to conclude that NetJets's asserted reasons for those problems—security concerns, negotiations, and changes in senior management—were pretexts for *something*. *See* 803 F.3d at 1338. But Siddiqui does not point to any evidence in the record, apart from his proffered comparators, that would support an inference that the real reason for either the initial investigation or the ensuing delay was discrimination on the basis of his race, religion, or national origin. *See id.*; *St. Mary's Honor Ctr.*, 509 U.S. at 514–15.

---

[1] Like the district court, we assume for argument's sake that Siddiqui established a *prima facie* case, and thus we address any claims concerning comparators at the pretext stage. *See Lewis*, 918 F.3d at 1223 n.9.

6

First, looking to President and Chief Operating Officer Bill Noe's initial decision to place Siddiqui on administrative leave, the question is not whether Noe had good reasons for his decision but rather whether Noe had a *nondiscriminatory* reason for his decision, even if that reason was mistaken or unfair. *See Alvarez*, 610 F.3d at 1266. In support of his contention that Noe's decision was discriminatory, Siddiqui points to Noe's statement that he had reviewed Siddiqui's trips to Pakistan before making his decision. Noe testified, however, that whether Siddiqui had traveled to Pakistan "didn't have an impact" on his decision—he reviewed the trips because they were among the information given him by pilots who had complained about Siddiqui's "extreme[ly] anti-Semit[ic]" comments and other statements that had made them "uneasy" and "nervous." We also note that, to the extent that Siddiqui relies on his comparator evidence to provide an inference of discrimination, Noe was not the decisionmaker in any of the suspensions of Siddiqui's proffered comparators. *See Silvera*, 244 F.3d at 1261 n.5 ("[D]ifferences in treatment by different . . . decision makers can seldom be the basis for a viable claim of discrimination.").

Second, as to the delay in scheduling Siddiqui's crewmember review board proceeding, which prolonged his administrative leave for three years, Siddiqui does not allege—and the record does not reveal—who made that decision. Siddiqui simply asserts that NetJets's proffered reasons for the delay are

disingenuous and that the decision was based instead on "rumors and smoke." Br. of Appellant at 18. NetJets responds that during that delay it was awaiting the results of the FBI's investigation of Siddiqui and that its management was then embroiled in contentious negotiations with both the pilots' and flight attendants' unions. Although the evidence indicates that NetJets held crewmember review board proceedings for Siddiqui's comparators more quickly, Siddiqui has not created a genuine issue of fact as to whether NetJets's delay occurred in a discriminatory manner, given the lack of evidence concerning who, if anyone, affirmatively decided to delay Siddiqui's proceeding. *See Chapman*, 229 F.3d at 1030. Therefore, Siddiqui has not rebutted NetJets's explanation head-on. *See id.*

Third, as to his eventual termination, Siddiqui has not provided any evidence to support a finding that NetJets's proffered reason for firing him was false. *See St. Mary's Honor Ctr.*, 509 U.S. at 515. Again, the question is not whether the crewmember review board wrongly concluded that Siddiqui made inappropriate remarks and lied about it. The question is whether Vice President Alan Bobo, who did not participate in the proceeding, based his decision on a review of the proceeding notes and, in good faith, believed that Siddiqui had done so. *See Elrod*, 939 F.2d at 1470; *Alvarez*, 610 F.3d at 1266. The undisputed evidence shows that, in making the decision to terminate Siddiqui, Bobo relied on the review because he "trust[s] the folks that are running the CRB investigations and that's why they have

8

to provide [him] a summary."  Because Siddiqui provides no evidence disputing this explanation, he has not raised a genuine question of fact as to whether NetJets's proffered reason for his termination was pretext for discrimination.  *See St. Mary's Honor Ctr.*, 509 U.S. at 515.

Siddiqui's argument that the district court failed to resolve all inferences in his favor, improperly weighed the evidence, and made credibility determinations is unavailing because he has not presented evidence to support a finding that NetJets's reasons for placing him on administrative leave, extending his leave period, and eventually terminating him were pretextual and that discrimination was the real reason.  Accordingly, we affirm the entry of summary judgment in NetJets's favor on Siddiqui's discrimination claims.

## II

Title VII also prohibits an employer from retaliating against an employee for opposing an unlawful employment practice.  42 U.S.C. § 2000e-3(a).  And while 42 U.S.C. § 1981 does not expressly protect individuals from retaliation, both the Supreme Court and this Court have interpreted § 1981 as prohibiting retaliation. *See CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451–52 (2008); *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1412–13 (11th Cir. 1998).  As in the discrimination context, Section 1981 and Title VII retaliation claims are analyzed under the same framework.  *Standard*, 161 F.3d at 1330.

To make out a *prima facie* case of retaliation, a plaintiff must show that: "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1307–08 (11th Cir. 2009)). If the plaintiff does so, and the employer proffers a legitimate, nondiscriminatory reason for its actions, then the plaintiff must show that the employer's reason is pretextual. *Id.* at 1181–82. Ultimately, the employee must prove that "the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

For the purposes of a retaliation claim, a formal complaint of discrimination constitutes statutorily protected conduct. *Alvarez*, 610 F.3d at 1268. On the other hand, the Supreme Court has indicated that the receipt of a right-to-sue letter is not a protected activity because the employee himself takes no part in the action. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). An adverse employment action is one that might dissuade a reasonable worker from making a discrimination charge. *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008).

To demonstrate a causal connection, the plaintiff must show that (1) the decisionmakers knew of his protected activity, and (2) the protected activity and

10

adverse action weren't "wholly unrelated." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (citation and quotations omitted). The relatedness between the protected activity and adverse action may be demonstrated by temporal proximity. *Id.* at 716–17. Absent other evidence of causation, however, temporal proximity must be "very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted). For example, we have held that a three-month delay between a protected activity and adverse action was, standing alone, insufficient to show a causal connection, *id.*, but have found a seven-week gap between a protected activity and adverse action sufficient, *see Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999).

Siddiqui first contends that NetJets unreasonably extended his administrative leave in retaliation for the letter from his attorney alleging discrimination. He does not, however, point to any particular decisionmaker who was aware of the letter and, again, the record is unclear as to whether and by whom an affirmative decision to extend the leave was made. *See Shannon*, 292 F.3d at 716. To the extent that Siddiqui points to the timing of NetJets's crewmember review board proceeding as evidence of retaliation, it is undisputed that NetJets was in the process of scheduling the proceeding before it received the letter from his attorney. Because Siddiqui has not identified any decisionmakers who knew of his protected

11

activity and had any involvement with extending his leave, he has not established a causal connection between the letter and his leave period. *Id.*

As for any causal connection between his EEOC complaints and his eventual termination, Siddiqui argues only that NetJets's decision to terminate him on the ninetieth day after the EEOC issued his right-to-sue letter shows that NetJets waited to fire him until it believed it would be safe from a lawsuit. Receiving the right-to-sue letter, however, was not protected activity because Siddiqui took no part in the action. *See Breeden*, 532 U.S. at 273. And even if it were protected activity, temporal proximity must be very close—absent other evidence—to indicate causation. The three-month delay here, without more, is not enough. *See Thomas*, 506 F.3d at 1364.

In sum, the district court did not err in granting NetJets summary judgment on Siddiqui's retaliation claims because Siddiqui did not present evidence creating a genuine factual issue as to a causal connection between any protected activity and adverse action.

**AFFIRMED.**