[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11596
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-03672-TWT

MELVIN PERRY,

Plaintiff-Appellant,

versus

PEDIATRIX MEDICAL GROUP OF GEORGIA,
MEDNAX SERVICES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 20, 2021)

Before MARTIN, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Dr. Melvin Perry appeals the district court's grant of summary judgment for Pediatrix Medical Group of Georgia and Mednax Services on Dr. Perry's claims for race discrimination and retaliation. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Dr. Perry, an African-American male, specializes in pediatric critical care. In 2013, he was hired as a temporary pediatric critical care doctor by Pokroy Medical Group of Nevada, Ltd. Pokroy Medical is an affiliate of Pediatrix, a third-party medical provider of specialty services—like pediatric critical care—for hospitals and other health care facilities. Pediatrix is part of Mednax.

Pokroy Medical assigned Dr. Perry to work at a hospital in Nevada. While he was working in Nevada, Dr. Perry had a confrontation with a pregnant white pharmacist employed by the hospital. The pharmacist changed the medication regimen for one of Dr. Perry's patients without consulting him, and Dr. Perry confronted her about it. Dr. Perry and the pharmacist raised their voices at one another within earshot of a nearby patient area. After the incident, the pharmacist told another employee that she was afraid of Dr. Perry because he was a "big black guy."

When Dr. Perry learned of the pharmacist's comment, he filed a race discrimination complaint with the Nevada Board of Pharmacy. Dr. Perry did not tell anyone at Pokroy Medical about the incident or the complaint. Two weeks later,

2

Pokroy Medical terminated Dr. Perry's contract, explaining that there had been an "issue" and that his services would no longer be required. Pediatrix's records indicated that Dr. Perry was "asked to leave [his] assignment after [one] shift due to [a] bad patient outcome."

After he was terminated by Pokroy Medical, Dr. Perry worked from July 2014 to January 2015 as a medical director for the National AIDS and Education Services for Minorities Clinic (NAESM), a medical nonprofit primarily made up of African-American service providers that served primarily African-American patients.

On July 4, 2017, Dr. Perry emailed a copy of his resume to Kathleen Schlemmer, a Mednax recruiter, expressing his interest in one of four open pediatric intensivist positions at Scottish Rite Hospital in Atlanta, Georgia. Schlemmer responded that Dr. Perry should formally apply through Mednax's website. An hour later, before Dr. Perry had submitted his formal application, Schlemmer emailed Dr. Perry that he would not receive an interview. Dr. Perry asked Schlemmer if Mednax had already filled the positions and whether she could provide any additional information as to why he wasn't being considered. Schlemmer explained that "[Mednax] ha[d] a few solid candidates that they [were] considering." Mednax ultimately hired two white females, an African-American female, and a Pakistani female for the Scottish Rite positions.

3

Dr. Perry sued Pediatrix and Mednax for (1) race discrimination because they didn't hire him for one of the Scottish Rite Hospital pediatric intensivist positions and (2) retaliation based on the decision not to hire him because he complained about race discrimination in 2013.

Mednax and Pediatrix moved for summary judgment. They argued that Dr. Perry had not shown a genuine issue of material fact as to his race discrimination claim because Schlemmer, who decided not to hire Dr. Perry, did not know he was African-American. Mednax and Pediatrix also argued that Dr. Perry had not shown a genuine issue of material fact that their reasons for not hiring him—Dr. Perry's termination by Pokroy Medical and his prior history of workplace confrontations with the staff at the Nevada hospital—were illegitimate or pretextual.

As to Dr. Perry's retaliation claim, Mednax and Pediatrix argued that Dr. Perry had not shown a genuine issue of material fact that Dr. Perry's 2013 race discrimination complaint against the pharmacist at the Nevada hospital was the cause of the decision not to hire him because there was no evidence that Schlemmer (the decisionmaker) knew about Dr. Perry's complaint. Mednax and Pediatrix also argued that Dr. Perry could not show that the 2013 race discrimination complaint caused Schlemmer not to hire him because the four-year gap between the filing of the complaint and the hiring decision showed they were unrelated.

4

Dr. Perry responded that there was a genuine issue of material fact that Schlemmer knew he was African-American because: (1) he previously worked for Pediatrix; (2) he believed that a female Pediatrix/Mednax recruiter he met in 2013 may have been Schlemmer; and (3) his resume included a reference to NAESM. As to the retaliation claim, Dr. Perry responded that Schlemmer was aware of his work history with Pediatrix and therefore would have been aware of the complaint he had filed with the Nevada Board of Pharmacy. He also argued that because Schlemmer never affirmatively said she was unaware of the complaint, there was a factual question for the jury to resolve.

The magistrate judge recommended summary judgment for Pediatrix and Mednax on both of Dr. Perry's claims. As to the failure-to-hire race discrimination claim, the magistrate judge concluded that the "record support[ed] Defendant's contention that Schlemmer had no information about [Dr. Perry's] race or access to information about Dr. Perry's race when she was recruiting for the Scottish Rite position in 2017." Neither Dr. Perry's application nor the defendants' internal system, the magistrate judge said, included any reference to Dr. Perry's race. The magistrate judge explained that Dr. Perry's testimony about possibly meeting Schlemmer didn't support an inference that Schlemmer knew he was African-American because his testimony about meeting "a female recruiter whose name he cannot remember, at a conference the location of which he cannot recall" was

5

"nothing more than 'mere conclusions and factual allegations unsupported by evidence.'" Likewise, the magistrate judge concluded that the reference to NAESM on Dr. Perry's resume was insufficient to support an inference that Schlemmer knew he was African-American because NAESM employed doctors and served patients of all races and "[Dr. Perry] testified that he never had a discussion with Schlemmer about NAESM or his role with that organization, and [he] concede[d] there [was] nothing else on his [resume] that indicate[d] or could indicate that he [was] African-American."

As to Dr. Perry's retaliation claim, the magistrate judge concluded that he failed to establish his 2013 race discrimination complaint against the hospital pharmacist was the cause of the 2017 hiring decision because there was "no evidence that Schlemmer was aware of [Dr. Perry's] protected conduct when she rejected [Dr. Perry's resume]." The magistrate judge also concluded that Dr. Perry had failed to show that his 2013 race discrimination complaint was a but-for cause of his non-selection because it was temporally unrelated to the 2017 hiring decision.

The district court adopted the magistrate judge's recommendation and granted summary judgment for Pediatrix and Mednax because "[Dr. Perry] produced no evidence that the decision-maker knew of [Dr. Perry]'s race and no evidence of a causal connection between the failure to hire and a prior complaint of discrimination."

6

## STANDARD OF REVIEW

"We review de novo a district court's grant of summary judgment, applying the same legal standards as the district court." Alvarez v. Royal Atl. Dev., Inc., 610 F.3d 1253, 1263 (11th Cir. 2010). "We will affirm if, after construing the evidence in the light most favorable to the non-moving party, we find that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." Id. at 1263–64. "[T]he moving party has the burden of demonstrating that there are no genuine issues of material fact, but once that burden is met the burden shifts to the nonmoving party to bring the court's attention to evidence demonstrating a genuine issue for trial." Paylor v. Hartford Fire Ins. Co., 748 F.3d 1117, 1121–22 (11th Cir. 2014). "Overcoming that burden requires more than speculation or a mere scintilla of evidence." Id.

## DISCUSSION

Dr. Perry argues that the district court erred as to his failure-to-hire race discrimination claim because the evidence established a genuine issue of material fact that Schlemmer (the decisionmaker) knew he was African-American when she decided not to hire him. And Dr. Perry argues that the district court erred as to his retaliation claim because there was a genuine issue of material fact that his 2013 race discrimination complaint against the hospital pharmacist caused Schlemmer not to hire him.

7

*Dr. Perry's Race Discrimination Claim*

Dr. Perry argues that three facts create a genuine issue of material fact as to whether Schlemmer (the decisionmaker) knew he was African-American:  (1) Dr. Perry previously worked for Pediatrix; (2) Dr. Perry's resume showed he was associated with NAESM; and (3) Dr. Perry believed he met Schlemmer in 2013.

As a matter of federal law, employers are prohibited from refusing to hire an applicant "because of" his race.  See 42 U.S.C. § 2000e-2(a)(1) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."); 42 U.S.C § 1981 ("All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . .").  Failure-to-hire race discrimination claims that rely on circumstantial evidence, like Dr. Perry's, are evaluated under the McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973) burden-shifting framework.  Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1191 (11th Cir. 2016).

Under the failure-to-hire McDonnell Douglas framework, Dr. Perry had to show that: "(1) he [was] a member of a protected class; (2) he applied for and was qualified for a job for which the employer was seeking applicants; (3) despite his qualifications, he was rejected for employment; and (4) after the rejection, the

8

employer continued to seek applicants with [his] qualifications outside of [his] particular protected class." Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1305 (11th Cir. 2002). Critically, Dr. Perry also had to show that the decisionmaker knew he was a member of a protected class. See Walker v. Prudential Prop. and Cas. Ins. Co., 286 F.3d 1270, 1274 (11th Cir. 2002) ("Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent. When evaluating a charge of employment discrimination, then, we must focus on the actual knowledge and actions of the decision-maker."); see also Lubetsky, 296 F.3d at 1306 ("[A]n employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion."); Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("[S]ummary judgment was appropriate because there was no evidence that the decision-maker was aware of the plaintiff's disability when he made the decision to fire him.").

Dr. Perry first argues that Schlemmer knew he was African-American because he previously worked for Pediatrix's Nevada affiliate, Pokroy Medical. But Schlemmer testified that she was "[a]bsolutely not" aware of Dr. Perry's race at the time he applied for the position at Scottish Rite. Dr. Perry's resume didn't reference his race, and Pediatrix and Mednax's internal records and pre-screening forms that Schlemmer had access to during the hiring process didn't include any information about his race. Pediatrix's records stated only that Dr. Perry's previous position was

9

temporary and that he was "asked to leave [his] assignment after [one] shift due to [a] bad patient outcome."

Dr. Perry next argues that Schlemmer knew his race because he was a "member" of NAESM from 2014 to 2015.  But Dr. Perry's resume said that he was a "Medical Director," not a member.   And when Dr. Perry was asked whether "all of the doctors or all of the care providers [at NAESM] are minorities," Dr. Perry testified that "[t]hey can be anyone . . . ."  Dr. Perry also testified that he never had a conversation with Schlemmer about NAESM.  Because NAESM's doctors were not exclusively African-American, and there is no evidence that Schlemmer was familiar with NAESM, Dr. Perry's resume does not support an inference that Schlemmer knew Dr. Perry was African-American.

Dr. Perry finally argues that Schlemmer knew he was African-American because they met in 2013.  But Dr. Perry testified that he met a "lady" recruiter at a conference, he "could not remember her name," and he "wonder[ed] if [Schlemmer was] the person. . . . But it may just be because [he] interacted with her so much with all this that her name just seem[ed] to ring."  When asked whether "he kn[e]w for sure whether Ms. Schlemmer did or did not know what [his] race was back in 2017," Dr. Perry testified "No. Not with certainty, no."  Dr. Perry's "speculation" that he met Schlemmer was insufficient to create a genuine issue of material fact.  See Hartford Fire, 748 F.3d at 1121–22; Cordoba, 419 F.3d at 1181.

10

Because Dr. Perry's three facts are insufficient to create a genuine issue of material fact that Schlemmer knew Dr. Perry's race, the district court properly granted summary judgment for Pediatrix and Mednax as to his race discrimination claim.

*Dr. Perry's Retaliation Claim*

The district court granted summary judgment for Pediatrix and Mednax as to Dr. Perry's retaliation claim because Dr. Perry's 2013 race discrimination complaint against the hospital pharmacist did not cause Schlemmer's 2017 hiring decision. The district court concluded that (1) there was no genuine dispute that Schlemmer didn't know about the 2013 race discrimination complaint, and (2) the complaint was unrelated to the 2017 hiring decision. Dr. Perry argues that the district court erred because Schlemmer knew about the complaint since she knew about Dr. Perry's previous employment for Pediatrix's Nevada affiliate.

Employers may not refuse to hire an applicant in retaliation for complaining about race discrimination in the workplace. See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII] . . . ."); Gogel v. Kia Motors Mfg. of Ga., Inc., 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (concluding that retaliation claims are cognizable under section 1981). Retaliation claims based on

11

circumstantial evidence are also analyzed under the McDonnell Douglas framework. Gogel, 967 F.3d at 1134.

To establish a prima facie case of retaliation under the McDonnell Douglas framework, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there was some causal connection between the two events. Id. at 1134–35. To demonstrate a causal connection, the plaintiff must show that: (1) the decisionmaker knew of his protected activity, and (2) the protected activity and adverse action were not wholly unrelated. Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 716 (11th Cir. 2002).

A plaintiff satisfies the first causation element by presenting summary judgment evidence that the decisionmaker was aware of the plaintiff's formal complaint before the adverse employment action. See, e.g., Farley v. Nationwide Mut. Ins. Co., 197 F.3d 1322, 1337 (11th Cir. 1999) (concluding that there was a causal connection where the decisionmakers were aware of the plaintiff's EEOC claim shortly after its filing and fired him seven weeks later); Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354–56 (11th Cir. 1999) (concluding that there was no causal connection where there was no evidence that the decisionmaker was aware of the plaintiff's participation in the investigation of a sexual harassment claim against another employee). And a plaintiff may satisfy the second causation element by

12

showing that the filing of the formal complaint and the adverse employment action were in "close temporal proximity." Shannon, 292 F.3d at 716.

Dr. Perry presented no summary judgment evidence that Schlemmer knew about Dr. Perry's 2013 race discrimination complaint when she made the 2017 hiring decision. Dr. Perry testified that he never told Mednax, Pediatrix, or Pediatrix's Nevada affiliate about the complaint. The complaint stemmed from a confrontation with a pharmacist employed by a third-party hospital, not by the defendants, and it was filed with the Nevada Board of Pharmacy, not Dr. Perry's employer. Nothing ever came of it. Nothing in Pediatrix or Mednax's records suggests the hospital or the Nevada Board of Pharmacy brought it to his employer's attention. Even if Schlemmer was familiar with Dr. Perry's work history, nothing in that history showed she would have been aware of his 2013 race discrimination complaint. Pediatrix and Mednax's records, which are what Schlemmer had when she made the hiring decision, say only that Dr. Perry was terminated because of a "bad patient outcome." They say nothing about the 2013 confrontation with the hospital pharmacist.

As to the second causation element, the four-year gap between the filing of the 2013 discrimination complaint and the 2017 hiring decision showed that they were unrelated. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as

13

sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'"  Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273–74 (2001) (collecting cases and holding that a twenty-month gap was too long).  We've held that time gaps significantly shorter than four years were insufficient to establish a "close temporal connection."  See, e.g., Webb-Edwards v. Orange Cnty. Sheriff's Officers, 525 F.3d 1013, 1029 (11th Cir. 2008) (six-month gap too long); Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (three-month gap too long).

Because there was no evidence that Schlemmer was aware of Dr. Perry's 2013 race discrimination complaint before the 2017 hiring decision, and because he failed to show that the complaint and the hiring decision were related, the district court did not err by granting summary judgment for Pediatrix and Mednax on his retaliation claim.

**AFFIRMED.**

14